# Harris, Wright & Co. *v.* Halliday.

When a motion to set aside a verdict and grant a new trial on the ground of excessive damages, is refused by the court below, and the cause is brought up under the statute, it seems the appellate court will not award a new trial, unless the weight of evidence is clearly against the VERDICT OF THE JURY.

IN error from the circuit court of the county of Adams.

Montgomery & Boyd for plaintiffs in error.

Winchester, *contra.*

The only question in this cause arose upon the weight of evidence in a motion for a new trial, brought into this court for review under the statute. The cause is sufficiently stated in the opinion of the court by Mr. Justice TROTTER.

This was an action of assumpsit for money had and received. There was a verdict for the defendant in error for the sum of six thousand and four dollars, and he remitted the sum of $206 66. The plaintiffs in error moved for a new trial, which was overruled by the court, and they excepted. The error assigned is the refusal of the court to set aside the verdict. From the bill of exceptions it appears, that on the 7th day of January 1834, Halliday borrowed of Harris, Wright & Co. at New Orleans, the sum of $5000, for which he gave a due bill, and also placed in their hands as collateral security notes to the amount of $4453, with an authority to discount them at 3 per cent. per month. Halliday returned to Bayou Sara, where he learned that his due bill was in the hands of J. N. Smith, an attorney of that place, to whom he surrendered his slaves, stipulating that the proceeds of the same should be applied to the liquidation of the due bill. The suit was brought by Halliday to recover the amount of the notes left in the hands of Harris, Wright & Co. which they collected, as appears from the record. Halliday had already paid the due bill, as is

shown by the proof. The proof thus far will clearly sustain the verdict, unless it is destroyed by the testimony of the witnesses for Harris, Wright & Co. They speak of a final settlement between Halliday and the plaintiffs in error, on the 29th March, 1834. That the plaintiffs at that time presented to Halliday an account, in which they charge him with the $5000 borrowed; and credit him with the proceeds of the notes left with them as collateral security, deducting from the gross amount the 3 per cent. per month, and also crediting him with $1500, collected by Smith, their agent, which left a balance due Halliday of $206 66. Nugent states his recollection of the fact that on this settlement Halliday agreed to take an order on Smith for his due bill, which had not then been fully paid. Harrison says that in the summer or fall of 1835, he overheard a conversation between Halliday and Harris at Natchez, in which the former remarked that the latter owed him nothing, but that Smith was indebted to him. Baker states that he exhibited the account of Harris, Wright & Co. which is noticed above, and that Halliday made no objection to it. This account was exhibited by the witness in 1834, who also states that he paid Halliday the balance due on it of $206 66, in April, 1835, and that between the summer of 1834, and the time of making this payment, he frequently heard Harris warn Halliday to make no payments on the due bill, to Smith, and that he no longer recognised him as his agent.

There is an evident inconsistency in the testimony of these witnesses. If the final settlement did take place in March 1834, according to the statement of Nugent, and Halliday consented to take an order on Smith at that time for his due bill, it is inconceivable how Harris could afterwards claim any control over it, or on what ground the necessity could exist for him to notify or *warn* Halliday not to make any payments to Smith. If the settlement was had, the due bill was by that act discharged, for he was charged with the amount of it in the very account which Mr. Baker presented in March, 1834. How then can Smith derive any title to receive payments from Halliday? This evidence proves that there could not have been a final settlement at the time supposed by the witnesses. But the letter of Harris, Wright & Co. to Smith, dated the 16th of October, 1834, which is more

than six months after the supposed settlement, shows conclusively that none had been made. In that letter they direct him to forward to Wm. Harris & Co. at Natchez, all the indemnity, cash, notes or whatever he had received of Halliday. They urge him to attend to this request immediately, as they had been much troubled by Halliday's calling on them to settle. They complain of Smith for giving up the negroes, and say they have promised to settle with Halliday in ten days. It seems that in lieu of the negroes, Halliday had placed in Smith's hands notes and due bills, and the whole of the original due bill had been collected by Smith before the 23d day of January, 1835.

It is impossible to find in this proof any foundation for the alleged settlement as early as March, 1834. Because upon that supposition, Halliday would be made to pay voluntarily to Smith several large payments after he had already paid the whole at New Orleans, to Harris, Wright & Co. and taken an order for it, and it would also contradict the explicit statement of Harris in his own letter, dated six months afterwards.

It is very certain from the proof that the plaintiffs collected the amount of the notes placed in their hands at New Orleans, where the loan was first made by Halliday, and it is equally evident that Smith collected the whole amount of the due bill. This gives Halliday a right to recover the amount of the notes with interest, as that amount was received over and above the sum necessary to pay the original debt. Is there any thing in the proof to show that Halliday made the payments to Smith, who is acknowledged by the plaintiffs to be their agent on the 16th of October, 1834, in his own wrong? We think there is not. It is true, that Baker says, he heard Harris frequently, between the summer of 1834, and the spring of 1835, warn Halliday not to pay Smith any money. But this statement is too indefinite and too conflicting with the other proofs in the cause, to furnish a ground for turning Halliday round to seek from Smith, relief against over-payments, which are recognised by Harris himself as late as the middle of October, and which there is great reason to believe, from the whole of the evidence, were coerced from him by the very rigid course of the plaintiffs. The note was placed by Harris in Smith's hands for collection. By this agency he ob-

[Harris, Wright & Co. *v.* Halliday.]

tained possession of Halliday's negroes, which were not restored until other securities were placed in his hands. This was all done before the 16th day of October, 1834, the date of Harris's letter. Smith proceeded to collect the securities, as he had a right to do, and which Halliday had no power to prevent. Can it be seriously insisted in view of these facts, that Halliday is to be held accountable for any mismanagement of the money received on these claims. After they had been placed in Smith's hands, Halliday could not control them. It was then a payment to the agent of the plaintiffs. These were questions for the jury, whose province it was to weigh the evidence and decide upon its credibility. They have done so, and we see nothing upon the record to authorise us to set aside their conclusions. The plaintiffs did not negotiate the securities placed in their hands, as directed, and the terms of that contract would not therefore authorise them to charge Halliday 3 per cent. per month. Having considered this question in full view of the testimony of Mr. Baker, it is not deemed necessary to notice the question of surprise raised, in consequence of his absence at the time of the trial.

The judgment must be affirmed.