Hemphill, Ch. J.
The first ground assigned for error is, in permitting the judgment to be amended after a motion to set aside said judgment had been overruled, and an appeal taken.
We do not conceive that in this action the court exceeded its just authority. The term had not expired, and the power of the court over its judgments rendered during the term had not been exhausted. Until the expiration of the term, the court had competent authority to amend, reverse, or anuuTits judgments, as well upon material as immaterial points — upon the merits, as well as for matters of form.
We come now to the second assignment, viz, that there is error in the judgment as finally rendered.
The Probate Court had set apart for the use of the widow and child of the *9 deceased a house and town lot and such specific articles as are exempt by law from forced sale under execution. On appeal by a creditor, who is the appellee in this court, and whose claim accrued before the 16th February, 1S4G, the District Court reversed the decree, and adjudged the house and lot to be subject to the said claim and to all other debts contracted by the deceased anterior to the 16th February, 1846. This decree was subsequently amended by adjudging the widow and child to be entitled, out of the proceeds of the, house and lot, to the sum of five hundred dollars; and it was further decreed that the house and lot were assets in the hands of the administrator, subject to the debts of the deceased contracted prior to the 16th February, 1S46.
The first point for consideration is, whether the court had any authority, under the facts, to assign any property of the estate to the widow and child for their sole use and benefit.
The Probate Court, in making the decree, was acting under powers derived from the probate act of 1846. By that 26th section of the statute it is declared, in effect, that there shall be set apart for the sole use and benefit of the widow and children all such property of the estate as, by the Constitution and laws, has been or shall be declared not subject to forced sale for debts contracted after the 16th February, 1846; and in case there should not be among the effects of the deceased the specific articles exempt, by the Constitution and laws, from forced sale, a sufficiency of the other effects of the estate must be sold to procure such articles as are, by law, at the time of the death of the deceased, exempt from forced sale under execution.
A cursory survey of those provisions would leave the impression that the Probate Court had authority to designate such property only as had bpen declared specially not to be subject to debts contracted after the 16th February, 1846. Now. the homestead, guaranteed by the Constitution, is the only property specifically in that predicament. It is exempt from debts contracted subsequently to the operation of the Constitution, and this commenced on the 16th February, 1846. It is true that, by the law, a considerable portion of the property of every citizen or head of a family is exempted from forced sale, bnt this exemption extends to debts contracted as well before as after the 16th February, 1846, and we are to consider whether a fair construction of the language of the section would empower the court to set apart for the widow and child as well this property as that exempted specifically from debts contracted posterior to the 16th February, 1846.
If the section be received as a whole, it will be mauifest that the legislative intention was, that there should be designated not only the constitutional homestead, but also all property exempt from execution at the death of the deceased. The use of all the property exempt from execution was so highly appreciated that, to prevent the possibility of the widow and children from being deprived of their benefit, it was declared that if the specific articles so exempted be not found among the effects of the deceased, they shall be purchased and appropriated to that purpose.
The Legislature was certainly aware that, of all the articles exempt from execution, the homestead, provided for by the Constitution, was the only property subject to debts contracted prior to the 16th February, 1846. Yet their design to confer the whole of the exempted property is as obvious as that of assigning the homestead. The act must be construed with others in pari materia. It must be interpreted with reference to the laws then in force. If it were the intention to assign the homestead only, why employ the phraseology, that if all or any of the exempted articles are not to be found among the effects, &c. ? Such terms repel the idea that but one article alone was included in the reservation.
The language used in the second paragraph may well be regarded as moi'e comprehensive than the terms in which the first is expressed. In the first, the court is authorized to set apart, for the use of the widow and children, all such property as has been or shall be declared net subject to forced sale for debts contracted after the 16th February, 1846. The second declares, that in case *10 there should not be among the effects oí the deceased the specific articles exempted by the Constitution and laws from forced sale at the time of his death, then a sale shall Lake place and the articles shall be procured. No reference is made to the 16th February, 1846, as being the period
from which exemption of the property shall be dated. The second clause is sufficiently complete within itself, and would be susceptible of construction and enforcement if the first was stricken out; and the construction, of which its terms are susceptible, is so plainly in consonance with the legislative intention that we cannot hesitate to give it our assent.
But if tiie court of probate had not by any law been invested with authority to designate for the use of the widow of the deceased the property which in his lifetime had been exempt from execution, yet we are of opinion that the property in controversy in this case would have, in the possession of the widow, been exempt from execution or forced salo. During the existence of the marriage, the husband was the head of the family; but on its dissolution by death, the surviving wife was placed in that position, and in such she had all its incident rights, privileges, and exemptions. It cannot bo said that the administrator is entitled to all the property of the deceased, and that the claim of the widow as the head of the family to the exempted property must be deferred until the debts are satisfied.
To show the absurdity of this suggestion, let us suppose that the wife had died leaving a homestead and other articles exempt from execution as a portion of the community property. There is as much necessity to settle her estate by administration as that of a deceased husband. Yet no one would contend that her administrator could claim from the husband the homestead and other articles exempt from execution as assets, and subject to sale for the payment of the debts of the succession. And if in the hands of the surviving husband they cannot be subject to forced sale, neither can they in the possession of the surviving wife. The right of either, as the head of a family, to retain the property exempt from execution is perfect; and the right of one is entirely equivalent to that of the other, and is neither of a higher or lower or different, hut .of the same grade, nature, and force. Husband and wife are not one under our laws. The existence of a wife is not merged in that of the husband. Most certainly is this true so far as the rights of property are concerned. They are distinct persons as to tlicir estates. When property is in question, he is not a baron, nor is she covert, if by the former is meant a lord or master, and by the latter, a dependent creature, under protection or influence. They are coequals in life ; and at death, the survivor, whether husband or wife, remains the head of the family.
The staunchest advocate of the doctrine of woman-merger during the existence of the marriage will not assert that the sex, of itself, disqualifies a female from being the head of a family. Even the common law, hostile as it is to the rights'of married women, confers on the single woman — or spinster, as she is termed — the civil rights and capacities of man. She is his equal, political rights excepted. She requires no guardian to protect her person or property. In legal contemplation, and in fact, she is capable of managing and disposing of tier possessions and interests prudently and advantageously. The statute does not declare that the head of the family must be of the stronger sex; and the occupant, whether of the one sex or the other, is entitled to ail the rights and exemptions pertaining by law to the position.
These views are presented in reference to an estate composed of community property, and to the facts as they exist in this case. The house and lot in this controversy wore doubtless a portion of tire ganancial property of the matrimonial partnership; at least, this is the presumption until the contrary appears. In fact, the prima facie inference is, that all tire effects of the succession belong to the community! and no violence is offered to the spirit and intent of the Constitution and laws by holding that they guarantee to the sole use of the widow one half the property exempt in the lifetime of the husband, and that she is entitled to hold the oilier half of the exempted property for the benefit *11 of the children of the marriage. Tlie possession of this property by the husband was no inducement to tlie extension of the credit. The debts were not based on this as a fund to which the creditors could resort, and they can have no claim on the community estate until the portion exempted and guaranteed to the citizen or head of a family is detached from the mass of the effects. The claim of the head of the family to the exempted property is superior in right to that of the creditor, and the pretensions of the latter must yield to the inviolability of the grant to the former.
I am aware that, under tlie act of 1S48, (article 1211,) community property is ordered to be partitioned in a particular mode. But this section aud its provisions must be construed in reference to existing laws on the subject of exemptions; and be its expressions or constructions' what they may, they cannot affect the homestead guaranteed by the Constitution to every head of a family. The very object of the grant would be defeated if, on the death of either husband or wife, the property, exempted in the lifetime of either, aud in which they were jointly interested, be instantlysubjected to debts which, in their creation and existence, up to that moment, were inhibited by law from regarding this as a fund from which, by possibility, the3r could be satisfied. The very purpose of the exemption was, to render the property impregnable to the assaults of creditors; and the demands of the latter, in contravention of the rights of the beneficiaries, can never be sanctioned by courts of justice.
Under this review of the great objects to be achieved by the exemption, and with a due regard to the obligation upon courts to so administer tlie laws that their ends may not he defeated, the court might, without the special authority of tlie statute, have designated for the use of the widow and child that portion of the common property exempt in the lifetime of tlie deceased.
Where tlie succession is composed of tlie separate property of tlie deceased, a statutory provision would he required to designate and exempt from execution a portion of the estate for tlie sole use of the survivor.
Tlie next point is, whether there was error in directing the homestead to he sold, and five hundred dollars of the proceeds to be paid over to the widow and child.
It is, in my view, to be regretted that any limitation, as to value, was placed on the homestead exemption. Property, in value, is subject to great mutation : at one period depreciated to the lowest, and at another, inflated to the highest degree. Homesteads on town lots procured for a few hundred dollars may, in a short time and without additional improvements, from the increased valúo of property, exceed the constitutional limits of exemption. If, from this accretion in its appraised value, it be subject to forced sale, and the portion of the proceeds paid the owner be invested in another homestead, this again, in a short period, may greatly augment in value, and the family be a second time expelled from their home. This round of domiciliation in a home with its endearments, and expulsion with its miseries, may be several times repeated in the course of a few years; and ultimately, the ejection may take place aL a time when tlie price of property is so excessive that the portion of the proceeds of tlie homestead awarded the owner, may be wholly insufficient to procure a comfortable home suitable for the family. The object of such exemption is to confer on the beneficiary a home as an asylum, a refuge which cannot he invaded nor its tranquility or serenity disturbed, and in which may be nurtured and cherished those feelings of individual independence’which lie at tlie foundation aud are essential to the permanency of our institutions. As a measure of sound policy, it cannot be too highly commended; but its wise and beneficial purpose is constantly exposed to defeat by tlie subjection of the homestead, when exceeding a fixed value, to a forced sale.
Again, what is to prevent the husband, the head of a family whose homestead has been sold, from squandering (lie portion of the proceeds awarded him aud refusing to invest it in another homestead? There is no statutory provision requiring that this shall be done, or that tlie court shall so direct and decree. Such conduct on tlie part of the husband would, in effect, con *12 travene tlie constitutional provision disabling him from alienating the homestead without tlie consent of the wife.
It is impossible, without great injustice, to fix any arbitrary value on a homestead, even if tlie price of property was altogether stationary. A house wholly unsuitable for a large family might be comfortable and convenient for man and wife alone.
On examination, there will be found a marked distinction between the provision of the statute of 1830 and the Constitution, in this particular, viz, that by tlie statute the limitation of value is restricted to the improvements, whereas, by tlie Constitution, the valuation is placed on tlie lots themselves. The statute declares that the improvements shall not exceed five hundred dollars in value, and the Constitution, that the lots shall not in value exceed two thousand dollars. As the limitation is, under tlie law, attached to tlie improvements, it is very questionable whether tlie lot can be exposed to forced sale.
If it were possible to separate the improvements on a lot from tlie lot itself, iu a mode beneficial to the grantee of the exemption, I would be clearly of the opinion that the lot could not he sold, and only so much of tlie improvements as in value exceeded five hundred dollars. As a general rule this might be inconvenient; and perhaps the best mode of solving the difficulty would be, in most cases, to give the grantee the election to pay the excess of the value of the improvements over five hundred dollars, aud thus retain the homestead; and if in a fixed time this were not paid, that the lot and improvements he appraised separately and sold, and from the proceeds there be paid the owner the appraised value of the lot, and tlie additional sum of five hundred dollars for tlie exempted value of the improvements, aud that the remaining portion of the fund be subject to the liabilities of the debtor.
Another point is, whether there be error iu so much of the decree as declares, in effect, that tlie excess of the proceeds over the sum retained as exempted shall be assets in the hands of the administrator, and subject to debts contracted prior to the 16th February, 1S46.
We will examine, first, whether the excess is liable to debts contracted anterior to tlie 10th February, 1846, only, or to the debts generally of the deceased, liad there been no provision subsequent to the statute augmenting the value of the homestead exemption, it is clear that tlie excess over the statutory amount would be liable to all the debts, in the same way that the excess over tlie constitutional exemption constitutes a fund for tlie payment of debts without regard to the date of their accrual. Debts in relation to the homestead exemption arc divisible into three classes, viz :
1st. Those contracted prior to the 26th January, 1839, against which no exemption can ho claimed.
2d. Such as accrued before the 16th February, 1846, which do not attach on tlie property exempted by the statute of 1839; and,
3d. Debts posterior to tlie 16th February, 1846, from which the homestead guaranteed bjr the Constitution is exempted.
Now, when the amount of property which will satisfy the exemption of tlie statute is separated from the mass of the debtor’s effects, the excess is subject to debts of a date anterior to the 16th February, 18-16. But demands of a subsequent date are postponed not only until tlie amount of the statutory, hut also that of the constitutional, exemption is detached. The grant to the head of the family by statute, when exhausted as against debts prior to the 16th February, 1846, is further enlarged by the constitutional provision as against debts subsequent to that date. And it is only when the measure of tlie Constitution is full that the latter debts can attach on the property. There was no error in decreeing- the excess to be subject, not to debts generally, hut to demands anterior to tlie 16th February, 1846.
A question lias been made, whether the estate, exclusive of the exempted property, is not primarily liable for the payment of all debts, whether *13 they bo subsequent or anterior to the 16th February, 18-16. If there were a sufficiency of effects, exclusive of the property exempted, I have no doubt that all the debts should be satisfied out of that fund. But if they be not adequate to a full satisfaction, then arises the subtle question, whether all the debts are first chargeable on the excess, to be paid pro rata to the extent of the fund, and thus leaving the portion of the debts accruing anterior to the 16th February, 1846, which remains unpaid, the only charge to which the homestead and other exempted property can be subjected.
Note 3. — S. 0., 9 T., 127; 11T., 122.
Note 4. — Puckett v. Reed, 37 T., 308.
Note 5. — McCreery v. Fortson, 35 T., 648. A husband who occupies the homestead after the death of his wife, with ilia children and servants, is entitled to claim its exemption. (Taylor v. Boulware,17 T.,-74.) But children cannot control the parents in the disposition of thehome-stead, or asseit a right therein adversely to the act of their parents; whatever wi’l bind the head of the family will bind them. (Tadlock u. Eccles, 20 T., 782; Brewer v. Wall, 23 T., 585; Johnson v. Taylor, 43 T., 121.
Note 6. — North v. Shearn, 15 T., 174.
This is a question of some difficulty, and as there lias been no appearance on behalf of subsequent creditors to urge their claim to the only fund from which they can be satisfied, and as it does not appear from the condition of tiie estate that the appellants would be materially benefited by a decree to that effect,, the decision of the point is waived until it can be further discussed and considered.
The decree makes the excess liable to all the debts prior to the 16th February, 1846. No objection has been made to this direction. I-Iad there been, it would have been very questionable whether other creditors could have the benefit of a proceeding to which they were not parties, and to the charges and expenses of which they have not contributed.
The judgment of the District Court is reversed; and it is hereby ordered, adjudged, and decreed that the cause be remanded, with directions to ascertain the separate value of the lot in question, and also of the improvements as they existed at the death of the deceased. And it is further ordered, adjudged, and decreed, that the appellants shall have one month, from and after the establishment of the respective values of the lot and improvements, to elect whether they will pay the excess of the value of the improvements over the sum of five hundred dollars; and should such payment be made, then it is further ordered and decreed, that the house and lot be set apart for the sole use of the said Josephine and her child, exempt from all debts against the succession of the deceased. But should such payment be declined or refused, then it is further ordered, adjudged, and decreed, that the lot and improvements bo sold, and that out of the proceeds there be paid to the said Josephine, for herself and child, the amount of the valuation of the lot, and also the sum of five hundred dollars; and that the excess of the proceeds be assets in the hands of the administrator, subject to debts contracted prior to the 16th February, 1846.
Judgment reversed.