CHARLES KESSLER v. DANIEL DRAUB.

1. HOMESTEAD—FORCED SALE.—When a homestead has been once acquired, the subsequent death, marriage, or removal of all the individuals who composed the family, except the husband, does not subject the homestead to forced sale, under judgment against the surviving husband, who still occupies it as a home.

2. CASES APPROVED.—Taylor v. Boulware, 17 Tex., 77, and Wood v. Wheeler, 7 Tex., 13, approved.

3. ABANDONMENT.—See statement of case for facts held not sufficient evidence of abandonment of homestead.

APPEAL from Colorado. Tried below before the Hon. Everett Lewis.

Suit in trespass to try title, brought by Charles Kessler, in May, 1875, to recover of Daniel Draub et al. a lot and two store-houses in the town of Eagle Lake, Colorado county, Texas, and for damages.

The defendant Draub answered disclaiming any interest in the lot or in the houses. The defendants Preston Stockbridge, Annie E. Stockbridge, his wife, and Otto Draub answered by a general demurrer and general denial, and specially, that the lot and improvements were the homestead of Daniel Draub and

his wife, Elizabeth Draub, who died in 1876; that Daniel Draub continued to reside on it as his homestead until 1875, when he sold to the defendants; that Otto Draub and Annie Stockbridge were heirs and children of Elizabeth Draub, and that the lot was community property of their father and mother.

A jury was waived and the case submitted to the court, which, after hearing the evidence, gave judgment for defendant; to which plaintiff excepted, and gave notice of appeal.

The plaintiff introduced in evidence a judgment of the District Court of Colorado county, dated June 18, 1874, in favor of the plaintiff against Daniel Draub. It was admitted that execution issued upon that judgment and the sale of the lot under the execution by the sheriff, plaintiff becoming the purchaser. Also a deed from J. Brooks, sheriff of Colorado county, to plaintiff for the lot.

M. L. Wommock testified that Daniel Draub occupied a room in one of the houses, and kept his furniture, bedding, &c., in that room; that his wife died several years ago; that he had two children, Otto Draub and Mrs. Stockbridge, neither of whom lived with him.

Daniel Draub testified that his wife died in 1867, leaving two children, Otto and Annie; that the property was the homestead of himself and wife, and was community property; that his son had been living in Wharton county seven or eight years, and was over twenty-one years of age; that his daughter had been living with her husband, Preston Stockbridge, since her marriage, in 1873; that he was living on the property at the time of the execution sale, claiming it as his homestead, and had lived there ever since his wife's death.

J. W. Smith testified that during the fall of 1873 Daniel Draub told him he had moved, or was about to move, to his brother's, in Wharton county; that during the year 1874 he was at Eagle Lake at one time for a month or six weeks, and that Daniel Draub was not there then; that he afterwards met said Draub in Columbus, in the winter of 1874, and he

then told him that he was living at his brother's, in Wharton county.

F. Barnard testified that he was at Eagle Lake frequently in 1873 and 1874, and did not see Daniel Draub there; that he met Draub in Columbus in 1874, who told him he was living with his daughter, Mrs. Stockbridge.

Daniel Draub, recalled, testified that he never abandoned his homestead; that he frequently visited his brother in Wharton county and his daughter in Colorado county, and was absent for two or three weeks at a time, and on one occasion stayed at his brother's some three months; that he kept his furniture, bedding, cooking utensils, &c., in a room of one or the other of the houses; that when he left, he always left some one at Eagle Lake in charge of the property; that he rented out the store-houses.

Defendants also introduced a deed from J. D. Draub to Otto Draub and Preston Stockbridge, dated April 26, 1875, conveying his half-interest to them.

*F. Barnard,* for appellant.

I. The homestead of a family only is protected from forced sale for the payment of debts. The testimony does not show that the homestead right in the property continued at the time of the sale. (Const. of 1870, art. 12, sec. 15; Howard *v.* Marshall, 48 Tex., 471; Whitehead *v.* Nickelson, 48 Tex., 517; Wilson *v.* Cochran, 31 Tex., 677; Houston and Great Northern Railroad Co. *v.* Winter, 44 Tex., 597.)

II. A homestead can be abandoned without the acquisition of another one. (Cox *v.* Shropshire, 25 Tex., 113; Black *v.* Curran, 14 Wall., 463.)

III. There being no family to occupy a homestead at the time of the execution sale, the property was subject to forced sale for the payment of debts. (Const. of 1870, art. 12, sec. 15; Howard *v.* Marshall, 48 Tex., 471; Whitehead *v.* Nickelson, 48 Tex., 517; Wilson *v.* Cochran, 31 Tex., 677.)

IV. The defendant, Daniel Draub, having abandoned the

property as a homestead, left it liable to be sold under execution for the payment of his debts; and the plaintiff having purchased the lot at execution sale, acquired the legal title thereto, and was entitled to a judgment. (Cox *v.* Shropshire, 25 Tex., 113; Black *v.* Curran, 14 Wall., (U. S.,) 463.)

*Foard & Thompson,* for appellee.

I. We cite the court to Wood *v.* Wheeler, 7 Tex., 16, opinion by Judge Hemphill, and Taylor *v.* Boulware, 17 Tex., 77. In this last case, Judge Lipscomb says that "if the husband had no children, servants, or any one living with him after the death of his wife, it would still be his homestead so long as it continued his residence, and would be protected from forced sale." This is the law, as we take it, and therefore we do not cite numerous other cases in our reports holding the same opinion.

It would only be necessary, in order to show the appellant how fallacious is his position, and how dangerous to the welfare of families, to suppose a case which is continually happening; that is, where the husband dies, leaving no children, a homestead, and creditors. It would almost create a civil revolution in Texas for any court to hold that the creditors could drive the wife from the homestead and sell the property for the benefit of the husband's creditors; yet the rights of the surviving husband and the surviving wife in the homestead are precisely similar, as the opinions in the two cases already cited show.

II. Appellant contended below that his judgment was a lien upon all the real estate of Daniel Draub, his homestead as well as any other lands he might have owned at date of judgment; that the lien could not be enforced whilst he occupied the homestead, but that as soon as the occupation thereof ceased, and that the same did cease when he conveyed to his children, immediately thereon his lien attached and the property became liable for the debt.

That it has been so decided in some courts, we admit; as,

in Wisconsin and in Minnesota. (Smyth on Homestead and Exemptions, secs. 183, 184.) But our courts have always held that the creditors have no concern with the homestead, and that there can be no sale of the homestead which could be considered as fraudulent against the creditors. (Wood v. Chambers, 20 Tex., 254; Martel v. Somers, 26 Tex., 559.)

Our courts have also held that where there was a judgment lien upon lands of the defendant, and among these lands was the homestead, which the defendant and his wife conveyed, all the lands were subject to the judgment lien. In the case of Black v. Epperson, 40 Tex., 187, (Judge Gray delivering the opinion,) the court says that "it is clear that the debtor had the right to sell his homestead and acquire another with the proceeds, or otherwise, without thereby subjecting it to his general debts or any lien not made specific by valid contract." It appears to us that this case decides the one at bar. If it were otherwise, indeed, the homestead is but a prison in which any creditor could inclose his debtor.

All that is necessary is to secure a judgment against the debtor, keep his lien alive, and his debtor is as completely imprisoned as if he were in the penitentiary.

The rule of decision in Iowa is similar to that in Texas. (Smyth on Homestead and Exemptions, secs. 178, 179, 240.)

GOULD, ASSOCIATE JUSTICE.—After the death of his wife, in 1867, Daniel Draub, with two children of that marriage, continued to occupy the same homestead, it being community property. His son become of age and lived elsewhere, and in 1873 his daughter married and ceased to live with him. . In 1874 Kessler recovered a judgment against him, under which he levied on the late homestead, and having bought it in, brought this suit to recover possession.

The question presented is, whether Daniel Draub, continuing to occupy the same place as his residence, but having with him no family other than at times a single servant, that place was, in 1874, protected from forced sale as his homestead.

Taylor v. Boulware, 17 Tex., 77, is authority for the continuance of the exemption in favor of the surviving husband, "though without servants or any one with him," so long as the place continued to be his residence. (See also Wood v. Wheeler, 7 Tex., 13.)

That the widow, under like circumstances, retained her homestead rights, has never been questioned, and, indeed, could not be under the provisions in her favor in the various probate laws of the State. The act of August 15, 1870, which was in force in 1874, provided that exempt property should form "no part of the estate of a deceased person when a constituent of the family survives,"—apparently extending to the widow no greater protection than to the widower, both being constituents of the family.

It is not proposed to discuss the question, or attempt to vindicate the reason and consistency of the law in continuing to protect the surviving husband in the late homestead of the family, whilst it denies to him, or to any single person not the head of a family, like protection in a newly-acquired home. It is enough that we find in the constitutional and statutory provisions on the subject, and in the decisions of this and other courts, authority for our conclusion, that, at the time of sale, Daniel Draub was still protected in residing on the late family homestead. (Const. of 1869–'70, art. 12, sec. 15; Paschal's Dig., arts. 5487, 6834; Taylor v. Boulware, 17 Tex., 77; Wood v. Wheeler, 7 Tex., 13; Silloway v. Brown, 12 Allen, 30; Barney v. Leeds, 51 N. H., 253; Smyth on Homestead, secs. 151, 152; Const. of 1876, art. 21, sec. 52; Rev. Code, art. 2009.)

Under the evidence, the court did not err in holding that Daniel Draub had not abandoned his homestead at the time of the sheriff's sale. His subsequent sale of his half-interest to his children was not a matter of which creditors could complain, and certainly gave the plaintiff no right to recover in this suit.

AFFIRMED.