MARGERET WATKINS v. J. B. DAVIS.

IN THE SUPREME COURT OF TEXAS, AUSTIN TERM, 1884.

*Jurisdiction.*—While it is true that, as now organized, all the courts in this State are limited in jurisdiction as to the subject matters upon which they may adjudicate, as well as to the division of judicial powers among them, the fact remains, that they were created, and their respective judicial powers apportioned by the Constitution. While acting within the scope of the jurisdiction thus conferred, they cannot be considered strictly as inferior courts of special jurisdiction, in favor of whose proceedings no presumptions of regularity will be indulged.

*Practice—Service.*—The record and the papers in the case showing affirmatively that service of citation from the justice's court was duly had upon the defendant, the judgment rendered by the justice's court against the defendant, would not be subject to collateral attack, upon the ground that the record was false, and that in fact, no service was had ; especially without a showing that the plaintiff was chargeable with notice of that fact before he purchased the land by virtue of the judgment. Hence, evidence to impeach the judgment of the justice of the peace was properly excluded.

*Homestead Laws.*—It is a settled doctrine in this State that, as between the surviving wife and her creditors, the homestead upon which she and her husband were residing at the time of his death, is protected from forced sale so long as she occupies the same as such, even though she. be the sole surviving member of the family.

*Same.*—That, under the homestead laws of this State, the surviving wife may exchange the original homestead for other land, and by occupying the latter as her homestead, protect it from forced sale, admits of no question.

*Same—Exemption.*—A distinction is generally recognized with reference to the conversion of that class of property which is exempt, into that class which is not exempt ;—between a voluntary and an involuntary exchange—the general rule being, that where property of the first class is voluntarily converted into property of the other class, it will not be exempt from forced sale.

*Same.*—The proceeds of the sale of an original homestead, if the same be sold with the present specific and honest intention to reinvest such proceeds in another homestead, is no more subject to seizure, than would be a subsequent homestead, acquired by exchange, subject to forced sale. See the opinion *in extenso* on the question.

*Same—Charge of the Court.*—Under the law as above expounded, the trial court

should have instructed the jury, in substance, that when the sale of the homestead is made with the *bona fide* intention of investing the proceeds in another homestead, and this is done, the latter will be protected from forced sale.

Appeal from Dallas county.

*Thompson & Clint,* for the appellant.

### STATEMENT.

March 11th, 1881, appellee, Davis, brought this suit of trespass to try title against appellant to recover one and one-half acres of land described in the petition, claiming the same by and through a judgment rendered in justice's court against appellant November 29th, 1880, in favor of one Tice, and execution, levy, sale and purchase by virtue thereof.

Appellant claims that the property was her homestead and exempt from forced sale ; and, further, that she was not in fact served with citation, and had no other notice of the pending of the suit.

May 18th, 1882, the cause was tried and verdict returned and judgment rendered for appellee. By the assignment of errors it is claimed that the court erred in excluding the evidence offered for the purpose of impeaching the judgment of the justice of the peace; also in failing and refusing to submit to the jury the issue as to the homestead rights of appellant.

### OPINION.

As now organized, all of our courts are limited in their respective jurisdiction, as to the subject matter upon which they may each adjudicate, as well as to the division of judicial powers among them; still, they were all created, and their respective judicial powers apportioned by the constitution; and while acting within the scope of the jurisdiction thus conferred, they cannot be considered strictly as inferior courts of special jurisdiction, in favor of whose proceeding no presumptions of regularity will be indulged. (*Guilford* v. *Love,* 49 Tex. 715.)

However, that appellant was duly served with citation in the justice court, is made to affirmatively appear from the record and papers in that case. Therefore, the judgment therein rendered against her would not be subject to collateral attack, upon the ground that the record was false, and, in fact no service was had; and especially

without showing that appellee was chargable with notice of that fact, before he purchased the land by vertue of that judgment. (*Murchison* v. *White*, 54 Texas 81.)

Hence, we are or the opinion that the court did not err in excluding the evidence offered for the purpose of impeaching the judgment of the justice of the peace.

The other assignment of errors, when considered together, presents the question as to whether or not the land in controversy was, t the time of t he levy and sale, protected by the constitution as the homestead of the appellant.

It seems that the time her husband died and some time prior thereto, they were occupying a lot in the city of Dallas as their homestead; they had no children and the family consisted of the two. After the husband's death, she being old, infirm and barely able to make a support for herself, continued to occupy the place, until it was about to be sold for the accumulated taxes thereon, and which she was not able to pay.

For the purpose of saving the property from tax sale, and with the intention of purchasing the land in controversy with the proceeds, for a homestead, she sold and conveyed the city homestead, and with the proceeds arising therefrom, she purchased that in controversy and moved upon, and was occupying the same as a homestead at the time of the levy and sale at which appellee purchased.

It is well settled that, as between appellant and her creditors, the homestead upon which she and her husband were residing at the time of his death, would be protected from forced sale so long as she chose to occupy it as such, notwithstanding they had no children, and she no other family than herself. (*Kessler* v. *Draub*, 52 Texas 575.)

It is also settled that she might have exchanged the former homestead for the land in controversy, and, by occupying the latter as a homestead, it would be protected from forced sale. (*Schneider* v. *Bray*, 59 Texas, 668.)

There is a distinction generally recognized, with reference to the conversion of that class of property which is exempt, into the class which is not exempt, between a voluntary and an involuntary change or conversion.

And it is held, as a general rule, that where property of the first

class is voluntarily converted into property of the other class, that the latter will not be exempt from forced sale.

But when, as it is claimed in this case, the homestead was sold for the purpose, and with the then present and specific intent to reinvest the proceeds in another, it has been held in some of the states, that the proceeds of the former homestead would not be subject to garnishment, while in the process of the change and reinvestment. (*Watkins* v. *Blatschinski*, 40 Wisconsin, 347.)

In legal effect, such a transaction does not materially differ from an exchange of one homestead for another. True, the one is converted into money before the other is acquired, but, when that is done with the specific intention, and for the purpose of acquiring another, the object being to secure one homestead by disposing of another, no good reason is perceived why that might not be accomplished without subjecting either the proceeds or the home in which it is invested, to forced sale.

Our courts have at all times construed the exemption laws most favorably to those for whom the benefits were intended; and to hold that when a citizen, under the circumstances of this case, could not change in this manner one homestead for another without incurring the law of the exemption, and especially when no non-exempt property is placed beyond the reach of the creditor, by reason of the exchange, would be to reverse the rule of construction and would result in a strict construction of these laws against those whom they were intended to benefit.

Such a construction compels the owner to remain at one particular place, without regard to its surroundings or his necessities.

Taking the case, as sought to be made by appellant, as an illustration of the result of such a construction, and its vice becomes apparent. It is claimed that the lot in the city with the improvements thereon was all the property owned by appellant; that she was old, infirm and hardly able to make a meager support, and could not pay the tax upon the lot, which was then about being sold for the accumulated taxes.

Would the spirit of our Constitution warrant the assumption that the only alternative presented to her, under such state of case, would be either to remain until it is swept from her by a tax sale, or else to convert it into proceeds which the creditor may subject to his debt?

If so, the intention to protect the unfortunate and needy, which is the foundation upon which the homestead exemption has ever been supposed to rest, is a delusion, Such a result could only flow from an erroneous construction of that provision of our organic law, which was especially intended to secure a home to the unfortunate in the day of their calamity. Can it be truly said that when the necessity for the protection is greatest, that then it is to be withdrawn?

When the sale of the homestead is made with the *bona fide* intention of investing the proceeds in another, and that is done, the latter will be protected from forced sale.

We are of the opinion that the court erred in refusing to submit this view of the case to the jury, and therefore, the judgment ought to be reversed and the cause remanded.