## MARSHALL WELLS v. G. W. LITTLEFIELD.

SUPREME COURT OF TEXAS, AUSTIN TERM, 1884.

*Supreme Court—Jurisdiction.*—So soon as the jurisdiction attaches, under an ap-
peal or writ of error, this court has full control of the cause, and can make such or-
ders concerning it, as may be necessary to preserve the rights of the parties and
enforce its mandates.

*Same—Mandamus.*—For the purpose of enforcing such orders as come within the
jurisdiction of the court, it may resort to the writ of mandamus, or any other writ
known to our system of jurisprudence.

On motion.

Walter Acker, for respondent.

Willie, C. J.:  The return of the Hon. W. A. Blackburn, Judge
of the 17th judicial district, to the alternative mandamus heretofore
issued in this cause, does not controvert the jurisdiction of this court
as exercised in the issuance of the writ. Counsel for the respondent
have, however, in argument questioned that jurisdiction and to this
point, we give our first attention.

The jurisdiction exercised in issuing the writ of mandamus is
either original or appellate. (High on  Ex. Leg. Rem., sec. 2).

Under our constitution, the supreme court has appellate jurisdic-
tion only, and issues the writ of mandamus for the purpose solely of
enforcing that jurisdiction, (Const. Art. V. Sec. 3.)

So soon as the jurisdiction attaches under an appeal or writ of error,
this court has full control of the cause, and can make such orders

concerning it as may be necessary to preserve the rights of the parties and enforce its mandates. This jurisdiction continues until the case, as made by the appeal or writ of error, is fully determined by this court, and its judgment is completely executed by the court below. If the judgment below is affirmed, or reversed and remanded or reformed, this court can see that the party in whose favor its decision has been given, has the benefit of all proceedings below necessary to enforce its judgment. If remanded for a new trial, it retains control until the new trial is allowed in accordance with its mandate. If reversed and sent down to have some special judgment rendered by the court below, jurisdiction remains till that particular judgment is entered up, and the mandate of the court obeyed. For the purpose of enforcing all such orders coming within the appellate jurisdiction of the court, it may resort to the writ of mandamus, or any other appropriate writ known to our system of jurisprudence.

But it is urged that the writ cannot be used in this instance because the supreme court cannot reverse and remand a cause except for a new trial upon all the issues in the case, with those which were, and those which were not determined by the court in passing upon the appeal.

This view seems to be based upon the language of our Revised Statutes, Art. 1048, which provides that "where it is necessary that some matter of fact be ascertained, or the damages to be assessed, or the matter to be decreed is uncertain, in either of which cases the cause shall be remanded for a new trial in the court below.",

This article is in substance and the same as that contained in the act in force at the time the Revised Statutes were adopted, with the exception that the words "new trial in the court below" are used in the revised statutes, instead of the words "definite decision" which occur in the former act.

There is but little material variance between these two expressions, and in the case of Chambers v. Hodges, 3 Texas, 517, they were treated by Chief Justice Hemphill as having a similar meaning. We do not consider that by the use of the words "new trial" it was meant, that no matter what might be the decision of this court, or how it had settled the rights of the parties, in any case where a cause was remanded, in should be be reopened upon all its issues which could possibly arise in it with those which were determined

and those which were not by the decision of the supreme court. Examples readily occur in which this court may close investigation as to points passed upon in its opinion, but permit it as to others which it is necessary to ascertain, before a proper judgment, disposing of the rights of the parties can be rendered. For instance, in a suit for land where judgment was given for a defendant, who had pleaded improvements made in good faith. If that judgment is reversed, the court might as well render its judgment decreeing the land to the plaintiff, but remanding the cause for the purpose of ascertaining the value which should be allowed the defendant for his improvements. For other instances, see Ward v. Wheeler, 7 Tex., 25, and Anderson v. Powers, 59 Tex. 215. The language of the statute itself seems to imply that the very facts which are wanting, so as to prevent this court from fully disposing of the case, are those which the new trial may be given to ascertain. At least, that it would not be out of the power of the court to remand the cause for a definite finding of those facts alone.

It has been the practice of this court from its earliest days down to the present time, to reverse and remand causes to the district court, to enter up judgment in accordance with their decisions. (Chambers v. Hodges, 3 Tex., 729; Peters v. Caten, 6 Tex., 359; Wood v. Wheeler, 7 Tex., 13; S. C., 9 Tex., 127; Anderson v. Powers, 59 Texas, 213; Cowan v. Nixon, 28 Tex., 240.)

This having been the uniform, practical construction given to the the act in force, before the Revised Statutes were adopted, and the latter having adopted substantially the language of that act, it must have been the intention of the legislature, that the same interpretation should be applied to the new statutes. (Hillebrand v. McMahan, 59 Texas, 450; State v. Smith, 55 Texas, 447.)

We think this court had authority to remand the cause to be disposed of as required in the opinion of the court.

But it is further contended that in giving its directions to the lower court as to the further proceedings to be had in the suit, this court allowed the former a judicial discretion which could not be controled by a mandamus.

To ascertain what judgment was to be rendered, we must look as well to the opinion of the court accompanying the mandate, as to the mandate itself. (West v. Brorham, 14 Tex., 51).

The opinion directs the court to render judgment in favor of

Wells. That part of it is peremptory, and certainly leaves no discretion with the district court as to the party in whose favor the judgment must be entered up. If upon a new trial it should appear by newly discovered evidence or otherwise, that such a case had been made out as entitled Littlefield to recover, and the court should accordingly give judgment against Wells, the order of the court would be discharged. The very terms of the opinion preclude all possibility of a new trial upon any issues already made, or facts transpiring before the time of the former trial.

As to the nature of the judgment to be rendered, it is such as the district court should have rendered had its finding been in favor of Wells instead of Littlefield on the former trial of the case.

We will treat the question as if this part of the mandate left something within the judicial discretion of the court. How far did this discretion extend? Only so far as to determine from the records of the court as they existed at the time of the trial, the precise judgment which should be rendered in favor of Wells. If the court proceeded to make a new record, or rendered judgment under any circumstances against Wells, it would clearly exceed the limits of its authority.

Hence, the admission of new evidence was beyond the power of the court. In looking into the replevy bond it did not receive new evidence. The bond is properly no part of the testimony, but a portion of the record of which the court is compelled to take notice, without attention being called to it. Upon a jury trial it is no proper instrument to be submitted to them because it bears in no respect upon the issue they pass upon. When the judge performs the functions of a jury he does not consider the bond as a matter of evidence, but after he has determined that the defendant is entitled upon the proof to a recovery, he looks to the bond as a part of the record to see whether or not he shall render the statuatory judgment against the surities. It is just here that the mandate allowed him, if at all, the use of some degree of discretion, desiring its exercise as to any of the previous matters. If the bond was invalid, of course the judge would be authorized to deny the judgment against the surities, but it must still be in favor of Wells. If valid he must enter it up against the surities, and this was what the court did in its judgment of December 8, 1883, and its action was entirely proper and correct. But when it afterwards proceeded to set this judgment

aside, not for any error of the court in passing upon the bond, or the then present record of the cause, but on account of facts transpiring previously to the trial, it passed the bounds of the discretions allowed it, and tespassed upon a domain clearly closed to it by the mandate issued from the supreme court. It proposed to make a new record when we had ordered that the record as it then stood, should alone be considered. It proposed to imperil the rights of Wells to a judgment when the mandate or opinion declared that it should under any and all circumstances be rendered in his favor.

We think, therefore, that in setting aside the judgment of December 8, 1883, which had been properly rendered in accordance with our mandate, in order to let in newly discovered testimony, the court exercised a discretion not left to it under directions contained in our opinion rendered in this cause, and that it is our duty to enforce our said orders, and our appellant jurisdiction through the writ of mandamus.

If the ground taken by respondent's counsel that we can not issue the writ because the relator has his remedy by appeal is to prevail, then this court will be without power to enforce its judgments in any cause.

If the district court disobeys one mandate and the injured party appeals, and we again decide in his favor, that court may again disobey, and by continuing this course deprive us of all power to right any wrong which may be committed below. The position of the two courts will be changed. The district court will become the tribunal of last resort, and this court rendered subordinate to it in every respect.

Upon an examination of the authorities cited by appellant we find but one in which the mandamus claimed was asked in a case where the appellate jurisdiction of the supreme court had attached, and the views of the supreme court of the United States in that case are entirely in accordance with those expressed in this opinion. See exparte R'y. Co., 11 Otto, 711.

The following authorities, among many others, sustain the views herein announced, and warrant our action in issuing the present mandamus: Johnson v. Glasscock, 2 Ala., 522; Veeder v. Collins, 5 Miss., 339, Exparte Milwaukee R. R. Co., 5 Wall, 825, People v. Boein, 13 Mich., 523; Sibbold v. United States, 12 Pet., 491; Love-

lace v. Taylor, 6 Rob., 92; McGregor v. Buell, 1 Ky., 167; Huck v. Erkine, 50 Mo., 118.

We may add that we cheerfully acquit the distinguished District Judge, to whom the mandamus was directed, of any intentional disobedience to the mandate of this court. His well known high character and enviable reputation are sufficient, without reference to the statements contained in his return to assure us that he has failed to enter our order as directed solely from a misunderstanding of their scope and extent.

A preemptory mandamus will issue immediately commanding that the orders contained in the alternative writ heretofore granted, be observed and obeyed on or before the 20th day of the present month.

[Justice West declined to take part in the decision of this motion.