Leonard E. HOFFMAN, Jr. and W. R. Sessions, Appellants,

v.

Frank LOVE, Appellee.

No. 18063.

Court of Civil Appeals of Texas, Dallas.

April 12, 1973.

Rehearing Denied May 3, 1973.

W. R. Sessions, Sessions & Sessions, Dallas, for appellants.

Edward Drake, Brady, Drake & Wilson, Dallas, for appellee.

GUITTARD, Justice.

Our questions are (1) whether a purchaser of a residence from an owner who occupied it as a homestead has standing to claim the homestead exemption against a lien asserted by the former owner's judgment creditor and (2) the extent of the excess subject to the lien in an urban lot which was worth more than the $5,000 exemption at the time of its designation as homestead and has increased substantially in value at the time of foreclosure of the lien.

### 1. Purchaser's standing to claim homestead.

For simplicity we shall discuss the standing of the purchaser to claim the exemption as if no excess were involved and omit any reference to the excess until later in this opinion.

In 1955 Robert Karll and wife acquired a house and lot and began to occupy it as their homestead. In 1960 plaintiffs recovered a judgment against Karll in the amount of $33,976, with interest. Plaintiffs brought the present action against Karll and wife in 1964 to discover assets and to enforce their judgment lien against the property in question. The Karlls filed only a general denial. The action remained pending in this status until April 1969, when the Karlls sold the property to Frank Love, who subsequently filed a petition in intervention alleging that the property continued as the Karlls' homestead until it was sold to him. The Karlls made no further appearance in the litigation. At the trial the jury found that Karll did not abandon the property as his homestead before April 1969, when he sold to Love. The trial judge rendered judgment on the verdict allowing the exemption, and plaintiffs appeal.

Plaintiffs contend that the homestead exemption is personal and cannot be asserted by a purchaser. We hold that the purchaser has standing to assert that the judgment lien never attached to the property before it was sold to him. The controlling constitutional provision is Vernon's Ann.St.Tex.Const. art. XVI, § 50, which provides in part, as follows:

"The homestead of a family shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon . . . . . No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon . . . . . . ."

This provision protects the family of a judgment debtor against forced sale of the homestead and renders invalid any lien against it, with only the exceptions stated. Consequently a judgment, though duly ab-

stracted, never fixes a lien on the homestead so long as it remains homestead. The judgment debtor may sell it and pass title free of any judgment lien, and the purchaser may assert that title against the judgment creditor. Mayers v. Paxton, 78 Tex. 196, 14 S.W. 568 (1890); Black v. Epperson, 40 Tex. 162, 188 (1874); Johnson v. Echols, 21 S.W.2d 382 (Tex.Civ. App., Eastland 1929, writ ref'd). Moreover, the exemption has been interpreted as allowing a judgment debtor to sell and dispose of the homestead without restraint. Mauro v. Lavlies, 386 S.W.2d 825 (Tex. Civ.App., Beaumont 1964, no writ). In order to meet the needs of his family he may sell one homestead and invest the proceeds in another. Watkins v. Davis, 61 Tex. 414 (1884). This right is facilitated by Vernon's Tex.Rev.Civ.Stat.Ann. art. 3834, which extends the exemption to the proceeds of the sale of the homestead for a period of six months.

None of these rights would be adequately protected if a purchaser of the homestead were unable to assert the invalidity of the lien. A prudent purchaser would not be likely to pay full value if the lien could be attacked only by his vendor, who may have little interest in the matter after he receives the purchase money and moves away from the property.

■ Of course, a judgment lien attaches to the judgment debtor's interest if he abandons the property as his homestead before he sells it, but the jury here found no abandonment, and none of plaintiffs' points attack that finding as without support in the evidence.

Plaintiffs argue that the homestead exemption may be waived by failing to assert it in litigation in which it would have been material and that the Karlls waived the exemption here by failing to claim it in their answer or in any other pleading before they abandoned the property as homestead by conveying it to intervenor. Thus, plaintiffs insist that intervenor must take the litigation as he found it and cannot assert the exemption which the Karlls themselves failed to assert.

■ Although this argument has a ring of plausibility, we cannot accept it. No adjudication of the lien or of the homestead claim was made before intervenor bought the property, as in such cases as Nichols v. Dibrell, 61 Tex. 539 (1884) and Benson v. Mangum, 117 S.W.2d 169 (Tex. Civ.App., San Antonio 1938, writ ref'd). The Karlls' failure to plead the homestead exemption cannot be taken as a waiver of the exemption because they could have amended their answer and claimed the exemption at any time before the sale. After the sale intervenor was the party directly interested, and if the judgment lien had not attached before he bought it, no lien attached to the property in his hands under the authorities above cited.

■ The contention that the homestead exemption is personal to the judgment debtor was before this court in Englander Co. v. Kennedy, 424 S.W.2d 305 (Tex.Civ. App., Dallas 1968, writ ref'd n. r. e.), and was overruled with the observation that the judgment debtor did assert his personal right to the homestead by using and enjoying it as a home until he sold it. Accordingly, the court held that a subsequent purchaser of the homestead was entitled to have his title quieted as against the judgment creditor. We do not interpret this decision as limited to a situation in which the homestead claimants are in actual occupancy of the homestead. Tex.Const. art. XVI, § 51 expressly provides, "[A]ny temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired." This language, together with article XVI, § 50 above quoted, establishes beyond doubt the rule that a judgment lien does not attach to a homestead merely on the judgment debtor's removal from the property. No lien attaches until he abandons it as his homestead, and if he does not abandon it before he sells it, his conveyance is free of the judgment lien. The failure of the

Karlls to claim the homestead in their answer was not an abandonment as a matter of law. Consequently, we hold that intervenor has standing to assert that no judgment lien had attached.

### 2. *Excess subject to lien.*

We turn now to the problem of determining the excess subject to plaintiffs' judgment lien. The jury found that the value of the lot without improvements in 1955, when the Karlls began to occupy the property as their home, was $12,250, and that its value in 1969, when sold to intervenor Love, was $36,750. The record shows that intervenor paid $67,500 for the lot and existing improvements and added $40,000 in further improvements. Plaintiffs' judgment against Karll was for $33,976 and interest, which amounted to $17,915 at the time of the sale.

Plaintiffs contend that the excess should be determined by considering the value at the time of the sale to intervenor, and, therefore, it amounts to $31,750, the value of the lot at that time less the $5,000 exemption. Intervenor contends that the dollar amount of the excess should be determined at the time of the original designation of the homestead by the Karlls in 1955. Accordingly he argues that the excess amounts to $7,250, the value of the lot at that time above the exemption. The learned trial judge rejected both of these contentions. He found that when the Karlls acquired the property, the lot was exempt in the proportion which the $5,000 exemption bore to the $12,250 value at that time, so that $\frac{20}{49}$ ($5,000 out of $12,250) was exempt and $\frac{29}{49}$ ($7,250 out of 12,250) was subject to the lien. He apportioned the increase in value in the same ratio and held that $15,000 of the value ($\frac{20}{49}$ of $36,750) was exempt and $21,750 ($\frac{29}{49}$ of $36,750) subject to the lien. The judgment orders the property sold and allows plaintiffs satisfaction of their lien out of the proceeds to the extent of $21,750.

We conclude that the trial court adopted the correct rule for apportioning the increase in value between the exempt interest and the excess, although we do not approve all the terms of the judgment. The controlling constitutional provision is Tex.Const. art. XVI, § 51, as follows:

"The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, shall consist of lot, or lots, not to exceed in value five thousand dollars,[1] at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family. . . . "

The history of this section and earlier constitutional and statutory provisions indicate that the purpose of the language, "at the time of their designation as the homestead," was to make sure that the protection afforded to the family by the homestead exemption should not be reduced by inflation of land values. Swayne v. Chase, 88 Tex. 218, 30 S.W. 1049 (1895); Tex.Const.Ann. art. XVI, § 51 (1955), comment. Determination of the exemption according to the value at the time of designation has been recognized as constitutionally required in a number of cases involving homestead lots originally worth more than the amount of exemption. Clement v. First Nat'l Bank, 115 Tex. 342, 282 S.W. 558 (1926); Engbrock v. Haidusek, 95 S.W.2d 520 (Tex.Civ.App., Austin 1936, writ ref'd); Whiteman v. Burkey, 286 S.W. 350 (Tex.Civ.App., Galveston 1926, no writ); Fitzhugh v. Connor, 32 Tex.Civ.App. 277, 74 S.W. 83 (Austin 1903, no writ); Lake v. Boulware, 12 Tex.Civ.App. 660, 35 S.W. 24 (Fort Worth 1896, writ ref'd). In Engbrock v. Haidusek, *supra*, the Austin

1. By amendment adopted November 3, 1970, the amount of the exemption was increased to ten thousand dollars. Tex. Const.Ann. art. XVI, § 51 (Supp.1972).

court of civil appeals specifically held that the value at the time of designation of the homestead rather than at the time of a subsequent sale was controlling.

■ According to these decisions and the express language of article XVI, § 51, a lot worth $5,000 or less at the time of its designation as homestead remains exempt, no matter how much the value may increase. Lake v. Boulware, 12 Tex.Civ.App. 660, 35 S.W. 24 (Fort Worth 1896, writ ref'd). In such a case the value of the exemption increases in the same proportion as the value of the land. In our view, the same result follows from § 51 in case of a lot worth more than $5,000 at the time of designation. In that case the exemption covers an undivided interest in the lot, determined in the proportion that the exemption bears to the total value of the lot at the time of designation. This undivided interest remains constant, so that neither the exempt interest nor the remaining interest subject to the owner's debts changes with an increase in the value, just as in the case of a rural homestead, the exemption of two hundred acres out of a larger tract is unaffected by any change in value.

■ Any other interpretation would lead to grotesque inconsistencies. All parties agree that a homestead lot worth exactly $5,000 at the time of designation remains entirely exempt, even though its value increases to $15,000. But, according to plaintiffs' theory, if another lot worth $5,100 likewise triples in value, the exemption would remain at $5,000, and $10,300 would be subject to the claims of judgment creditors. According to intervenor's theory, if a lot worth $20,000 at time of designation triples in value, then the exemption amounts to $45,000, nine times the original amount of the exemption, while the excess subject to judgment liens remains the same. Under the proportionate increase theory adopted by the trial court,

any lot which has tripled in value since designation as homestead is exempt to the extent of three times the amount of the original exemption, whether or not the lot was originally worth more than the amount of the exemption, and if it originally was worth more than the amount of the exemption, then the excess subject to claims of creditors also amounts to three times as much. This result is fair to all parties and is consistent with the apparent purpose of the homestead exemption to protect the family to the extent of a lot originally worth $5,000, regardless of any subsequent increase in value.

These considerations persuade us that we should so construe article XVI, § 51 in the absence of contrary controlling authority. We find no contrary authority. Clement v. First Nat'l Bank, 115 Tex. 342, 282 S.W. 558 (1926) is not contrary to this view, since in that case the value of the land was found to be the same at the time of trial as at time of designation as homestead. All the decisions cited in the briefs are consistent with the theory that the exemption covers a fixed undivided interest. Thus in General Bonding & Casualty Ins. Co. v. Trabue, 174 S.W. 689 (Tex.Civ.App., Texarkana 1915, no writ), the excess was treated as an undivided interest stated as a percentage, and the court affirmed a judgment ordering sale of this undivided interest only with the observation that a purchaser would be entitled to equitable partition in a subsequent proceeding. However, the nonexempt undivided interest need not be sold separately, nor must the purchaser at a foreclosure sale be left to his right of partition in subsequent litigation. If a fair division in kind cannot be made, the entire property may be sold and the proceeds divided between the homestead claimant and the judgment creditor according to their respective undivided interests determined by the values as of the time of designation. Harrison v. First Nat'l Bank, 238 S.W. 209 (Tex.Comm'n App.1922).[2] The correct

2. In *Harrison* the lot was worth $8,000 and the improvements $16,000 at the time of designation, and the excess of $3,000 was treated as an undivided one-eighth

procedure for protecting the interest of the homestead claimant is outlined in White-man v. Burkey, 115 Tex. 400, 282 S.W. 788 (1926), *certified question conformed to,* 286 S.W. 350 (Tex.Civ.App., Galveston 1926, no writ). That case was a suit for partition by the heirs of a deceased wife against the surviving husband, who claimed the right of continued occupancy of the homestead. The lot was found to be worth $6,500 at the time of its designation as homestead. In answer to a certified question, the Supreme Court held the property to be subject to partition to the extent of the one-half interest of the wife's heirs in the excess of $1,500 on the theory that those owning an interest in the property should be on as favorable footing as a creditor under article XVI, § 51. Following this ruling, the Galveston court of civil appeals held that the interest of the wife's heirs subject to partition was one-half of the $\frac{15}{65}$ excess ($1,500 out of $6,500). The case was remanded with instructions that the trial court should determine separately the values of the lot and of the improvements and should permit the surviving husband to pay the wife's heirs their portion of the excess and retain the homestead. The court further directed that if a sale should become necessary in order to partition the excess, "the proceeds of such sale should be apportioned to the improvements and the lot in accordance with the respective values found by the trial court, and plaintiffs should be awarded one-half of $\frac{15}{65}$ of the proceeds of the sale of the lot." Apparently, the court treated the value of the lot at time of designation as fixing the non-exempt interest subject to partition at an undivided $\frac{15}{65}$ interest in the lot only, and directed that the current values of lot and improvements be determined in order to establish a ratio by which the homestead claimant would receive from the proceeds of the sale that part attributable to the improvements and the exempt $\frac{50}{65}$ interest in the lot, and would share equally with

the heirs in that part of the proceeds attributable to the non-exempt $\frac{15}{65}$ interest in the lot.

 Although the decision in White-man v. Burkey, *supra,* supports the proportionate increase theory adopted by the trial court, it does not support the direction in the present judgment that the proceeds of the sale, after payment of costs and expenses, be applied first to satisfaction of plaintiffs' judgment to the extent of the $21,750 excess before distribution of the balance to intervenor. Neither does any authority support the trial court's determination of value of the excess undivided interest as of the time of purchase by intervenor. According to our analysis, the exemption covers an undivided $\frac{20}{49}$ interest in the lot, plus all improvements, and, of course, the improvements added by intervenor are not subject to the judgment against the former owner. On request, the court should have determined the values of the lot and the improvements as of the time of the trial, and should have directed that the proceeds of the sale be prorated according to the values so found. Otherwise, the share of the proceeds attributable to the improvements cannot be determined. Moreover, costs of the sale cannot be imposed on the exempt interest under article XVI, § 50. However, these matters have not been raised either in the trial court or on this appeal, and we mention them only to avoid any implication that we approve the procedure adopted.

### 3. *Purchaser's right to discharge lien.*

 Intervenor presents a point complaining that the judgment fails to dispose of all issues raised by his pleadings in that it does not quiet his title to the property. In this respect he is correct. He is entitled to have his title quieted on payment to plaintiffs of the amount of their judgment to the extent of the excess. North v.

of the full value of the property ($3,000 out of $24,000) but this interest was considered equivalent to three-eighths of the value of the lot ($3,000 out of $8,-

000). See opinion of court of civil appeals in 224 S.W. 269 (Tex.Civ.App., Fort Worth 1920).

Shearn, 15 Tex. 175 (1855); Wood v. Wheeler, 7 Tex. 13 (1851); Whiteman v. Burkey, 286 S.W.2d 350 (Tex.Civ.App., Galveston 1926, no writ). Accordingly, as required by these authorities, the judgment below is reformed to the extent that the intervenor is permitted thirty days after filing our mandate in the trial court in which to pay into the court or to plaintiffs the amount of their judgment to the extent of the $21,750 excess found by the trial court, and upon such payment, intervenor's title is quieted as against any further claim by plaintiffs. If such amount is not paid within that time, then the judgment of the trial court as originally entered shall be carried out. Costs of appeal are divided equally.

Reformed and affirmed.