# THE
# TEXAS LAW REPORTER.

## AUSTIN, TEXAS, JUNE, 1883.

### H. R. HILLEBRAND vs. CORA McMAHON, et al.

SUPREME COURT, AUSTIN TERM, 1883.

*Justice of Peace—Power to foreclose Attachment Lien on Land.*—In our attachment laws no distinction is made between the power of a Justice of the Peace and that of a District Court in reference to foreclosing an attachment lien on land, except as to the amount involved.

Throughout all the years elapsing from the beginning of our State government, and under all its changes of constitutions, down to the date of the adoption of the present one, Justices of the Peace took jurisdiction of attachment and such other incidental liens upon both real and personal property, and it was never questioned.

As there is nothing contained in the present constitution, which restrains the power previously exercised by Justices to foreclose attachment liens, under constitutions with like provisions, it must be concluded that it was the intention to continue the power.

The power of a Justice of the Peace to have land sold under a *fi. fa.* issued from his court has been frequently sanctioned, and as an attachment is but an initiatory execution, so long as jurisdiction is expressly sanctioned in the one, no reason can be urged why the framers of the constitution should have intended to deprive them of it in the others.

Appeal from McLennan County.

H. R. Hillebrand instituted an action of trespass to try title in the District Court of McLennan county, against Cora McMahon and W. W. Golson, for the premises described in his petition, alleging in substance that he was the owner of an unexpired estate for years in said premises, extending until July 1, 1888, and that defendants dispossessed him thereof on January 3, 1882, and that the rents thereof were worth $25.00 per month. That Cora McMahon was on Oct. 5, 1881, indebted to many persons, and among them, to Hillebrand & Goldstein, a firm composed of plaintiff and I. A. Goldstein, in the

sum of $150.00; that on said Oct. 5, Cora McMahon purchased the leasehold in question for $1,000.00; and paid the consideration out of her own funds, and that she and said Golson caused the deed therefor to be made to said Golson with the intent and for the purpose of defrauding, hindering and delaying her said creditors, and that Golson knew of, and participated in said fraudulent intent, and paid no consideration for said leasehold interest. That on Oct. 25, 1881, Hillebrand & Goldstein instituted suit against Cora McMahon for their debt in the court of a justice of the peace oi McLennan county, and caused a writ of attachment to be issued and levied on said leasehold interest as the property of Cora McMahon; that they obtained judgment against Cora McMahon for their debt and for a foreclosure of their attachment lien on said premises and for an order of sale thereof. That an order of sale was accordingly issued by the justice and duly executed by the sheriff, and that plaintiff at said sale on said January 3, 1882, purchased the premises, paid the amount of his bid and received the sheriff's deed therefor. That said Cora McMahon had no other property from the time of instituting said suit until the present. Plaintiff prayed for judgment for the premises, rents, costs, writ of sequestration and relief general and special.

Defendant, Cora McMahon, disclaimed ownership of the property and set up that she occupied the same as tenant of Golson.

Defendant, Golson, demurred generally and pleaded general denial and not guilty.

The court sustained the general demurrer of W. W. Golson, on the ground that under Art. 1544 Rev. Stats. the justice of the peace did not have jurisdrction to order the sale of the said attached leasehold interest.

Plaintiff filed a trial amendment praying on the facts already stated for a foreclosure of his said attachment lien, and that said I. A. Goldstein be made a party plaintiff for that purpose.

Defendant, Golson, filed general and special exceptions to said trial amendment.

The court entertained said exceptions and dismissed the suit. Plaintiff gave notice of appeal.

Opinion by Willie, C. J.

One of the questions raised in this case and which is decisive of it

is: Has a justice of the peace jurisdiction to foreclose an attachment lien on land?

In our attachment laws no distinction is made between the power of a justice of the peace and that of a district court in reference to foreclosing such liens, except as to the amount involved. If, therefore, they have no authority to enforce a lien of this character upon land, it must be because the legislature has no right to confer it upon them.

The position taken by appellee's counsel is that the levy of the attachment creates a lien, and the subsequent proceedings are had in part for the purpose of enforcing that lien by judgment and execution, and exclusive jurisdiction in such cases belongs to the district court.

Art. 5, sec. 8 of our constitution provides that the district court shall have jurisdiction of all suits for the trial of title to land, and for the enforcement of liens thereon; and in section 1544, Rev. Stat., it is enacted that "Justices' courts have no jurisdiction of suits for the enforcement of liens upon land."

A brief review of our sevaral State constitutions and of the statutes enacted under them, and of the decisions of our courts upon the subject will show that district courts have always had exclusive jurisdiction of suits for the foreclosure of liens on land; and until the passage of the act of August 13, 1870, had exclusive jurisdiction of all suits for the foreclosure of liens upon personal property also.

The constitution of 1845 was silent as to the jurisdiction of district courts in matters of lien of any kind. When the question arose as to their power to enforce vendors' liens, mortgages, &c., where the amount secured was within the jurisdiction of a justice's court, it was held that they had exclusive jurisdiction for this purpose.

Marshall vs. Taylor, 7 Texas, 235.

Lane vs. Howard, 22 Texas, 8.

The first of these was a case of mortgage on personalty; the second a case of vendor's lien on land. Although the court held in these cases that the amount in controversy was the value of the security, which was over $100; and that this would give the district court jurisdiction, yet in the last case they went further and said that it was not the intention of the law to give to justices of the peace jurisdiction to determine questions, the decision of which, requires correct knowledge of the abstruse principles of equity juris-

prudence. Subsequently in the case of Hargrave vs. Simpson, 25 Texas, 396, this was re-affirmed, and it was expressly decided that a justice's court could not enforce such liens whether the value of the security was more or less than $100. From that time it became the settled law of the land under the constitution of 1845, that exclusive jurisdiction of all suits to foreclose liens upon property either real or personal was vested in the district courts.

The next constitution, that of 1866, in express words, gave to the district courts original jurisdiction of all suits for the enforcement of liens, making no distinction between those upon real and those upon personal property. Hence this constitution presented in terms as organic law what had before rested only in the decisions of the courts under a constitution silent upon the subject. It thereby adopted all the results of these decisions, and all qualifications or exceptions to them which the practice or acquiescence of the courts had recognized.

Our next constitution, that of 1870, used precisely the same language as does that of 1866 in giving to district courts jurisdiction for the enforcement of liens. (Art. 4, sec. 7.) In section 20, art. 4, however, it provided that justices of the peace should have such civil jurisdiction as should be provided by law; and the legislature on Aug. 13, 1870, gave power to justices to foreclose mortgages and other liens upon personal property when the amount in controversy should not exceed $100. This was the state of the law at the time of the adoption of the constitution of 1876. That is to say, the district courts possessed full jurisdiction of suits to enforce against property of any description liens of the kind mentioned in the decisions to which we have referred, subject to the right of justices of the peace to enforce them upon personal property when the matter in controversy did not exceed $100.

These liens may be defined to be such as were created by the act of the parties, as existed before the suit was commenced, and formed the basis of it, or an important part of the same, such as mortgages, deeds of trust, vendors' and mechanics' liens and others of like character. They were such as must be alleged in the pleadings of the cause wherein the foreclosure was sought. The property bound by them must be fully described and a prayer for a foreclosure contained in the pleadings.

The evidence should sustain these allegations, and the verdict

establish the existence of the lien, or no judgment foreclosing it could be rendered. Preston vs. Breedlove, 45 Texas, 48. All persons having an interest in the subject matter of the suit could make themselves parties to the cause, and have their rights determined and their equities adjusted.

It is clear that for the adjudication of matters so intricate and so liable to complication a correct knowledge of the most abstruse principles of law and equity might be required. Justices of the peace were not supposed to possess knowledge of this character to the same extent as district judges chosen as the latter were from the legal profession.

For these reasons the cases of Lane vs. Howard, and Hargrave vs. Simpson, held the true interest of the constitution to be that jurisdiction in all such cases should rest with the district court, and this ruling as we have shown was carried into the constitution subsequently adopted.

But there is another class of liens of a wholly different character, viz : liens created by the levy of an attachment or execution, or the rendition of a judgment in a court of record. These did not exist at the commencement of the suit, but were acquired during its progress, and by reason of proceedings had in the cause. They did not arise from consent of parties, but were fastened unwillingly upon the property of the defendant by reason of certain legal measures pursued in court by the plaintiff. They were not the foundation of the action but were incidents arising during its progress.

No allegations in reference to them in the pleadings nor prayer for their enforcement was necessary even after they had been created.

No evidence could be introduced on the trial in reference to them. No finding of these liens in the verdict was required, but the judgment of the court foreclosing them, followed as a matter of course, upon the recovery of the money for which the action was brought.

A verdict being the decision of the jury upon the matters contested between the parties, as none fixing the lien could be rendered, no contest upon that subject could arise in evidence. Our courts have held that the facts upon which the attachment is based cannot be disputed so as to defeat the lien. Cloud vs. Smith, 51 Texas, 611.

And further that third parties interested in the subject matter should protect their rights in other ways than by making themselves

to the attachment suit. That the claimant in the case of personalty should resort to the action of trial of right of property, and in case of real estate to his action of trespass to try title or to remove clouds or other appropriate proceedings.

Whitmore vs. Willis, 51 Texas, 426, 427.

In causes involving liens of this character no difficulty of decision can arise more than in ordinary suits for debt. All that is required of the court is to pursue the provisions of the statute which are plain and simple and easy of interpretation.

The constitution might well entrust such matters to those unlearned in the law, especially where the amount involved was limited. Hence we find that whilst the courts were placing liens of the former character wholly within the cognizance of the district court, they practically allowed the other class to remain under the jurisdiction of justices of the peace where the amount in controversy was small. Throughout all the years elapsing from the beginning of our State government and under all its changes of constitutions, down to the date of the adoption of the present one, justices of the peace took jurisdiction of such incidental liens upon both real and personal property, and it was never questioned. The legislature sanctioned it; the courts, public officers, the legal profession and the public generally acquiesced in a practice and a construction which gave to these inferior courts full cognizance of such liens.

Titles to land were obtained under it which have been enjoyed for years; rights grew up which should not be disturbed after the lapse of so great a time.

Thus in support of the view that attachment liens were not included with those within the exclusive jurisdiction of the district court we have legislative interpretation; contemporaneous and practical construction; acquiescence on the part of every one in the exercise of such jurisdiction, and a strong argument in its favor drawn from the inconvenience and even disastrous consequences which would result from a decision adverse to the jurisdiction. Cooly on Const. laws, 65, 67, 70; Stewart vs. Laird, 1 Cranch, 71; Rogers vs. Goodwin, 2 Mass., 478; Scanlan vs. Childs, 33 Wise, 663.

In this state of the law, viz: with exclusive jurisdiction in the district courts to enforce all liens upon property which existed by the acts of the parties, subject to the rights of magistrates' courts to enforce them on personal property worth not more than $100;

and whilst these courts had been for more than 30 years without question exercising the power of enforcing attachment liens upon land, as well as other property, the constitution of 1876 was adopted. This instrument so far from interposing to destroy the exercise of these powers, adopted precisely the same language as had been contained in previous constitutions under which such jurisdiction had never been denied, except that it restricted the exclusive jurisdiction of the district courts to the enforcement of liens upon land, whereas they had previously possessed it as to liens on personal property also.

As there is nothing contained in this instrument which restrains the power then and for a long time previously exercised by justices to foreclose attachment liens, under constitutions with like provisions, we must conclude that it was the intention to continue the power, and to limit the exclusive jurisdiction of the district court to that class of liens on land of which they had taken special and sole cognizance under previous constitutions, and that justices of the peace were still to foreclose such liens upon land as under the preceding constitutions and without reference to the act of August 13, 1870, they had enforced against property of all kinds.

The power of a justice of the peace to have land sold under a *fieri facias* issued from his court has been frequently sanctioned in our State. (Cassady vs. Anderson, 53 Texas, 527; Long vs. Brenneman, decided at this term.) What reason can be offered why he may not first attach and afterwards sell it under execution?

An attachment is but an initiatory execution issued before judgment and in anticipation of it. McKoy vs. Harrower, 27 Barb., 469.

In selling land by virtue of an execution issued before judgment a justice exercises no higher power than in making sale under process issued afterwards. It is in effect foreclosing a lien as much in one case as in the other, the one having been obtained by levy of an attachment, and the other by levy of an execution.

If the attachment is improvidently issued or levied, he can by an order release the property; but he can do the same thing in case of like improper proceedings in issuing or levying the execution. He may be called upon to exercise as much authority and judicial discretion in the one case as in the other; and so long as jurisdiction is expressly sanctioned in the one, no reason can be urged, why the framers of the constitution should have intended to deprive them of it in the other. What course is a plaintiff left to pursue who has a

claim of less than $200, which he wishes to enforce by attachment on land ?

It is urged that he must first commence suit in a justice's court, obtain his attachment and have it levied on land, and then take a transcript of the proceedings and sue in the district court to enforce the lien thus created.

Admit that this may be done; that a suit may be commenced in a court not for the purpose of obtaining a judgment, but the issuance and service of a writ of attachment, and that this lien may be preserved without obtaining judgment and execution followed by a sale by order of the court granting the writ, which may be doubtful. If this is the course which the framers of the · constitution intended should be pursued, they prescribed and commanded something which our whole system of jurisprudence especially abhors, viz : a multiplicity of suits to settle a matter in controversy between the same parties. We are loath to believe they had any such intention when the opposite principle lies at the foundation of the whole judicial scheme which they have either provided themselves, or adopted from their predecessors. As the language of the constitution does not in clear and unmistakable terms remove from these inferior courts a jurisdiction they have so long exercised without challenge, and which is so necessary to a speedy settlement of the rights of litigants where small amounts are involved; and as by all the usual rules of construction in doubtful cases they are entitled to retain this jurisdiction we feel constrained to hold that it still rightfully belongs to them.

We are of opinion, therefore, that the court below erred in sustaining the demurrer to appellant's petition, for which the judgment must be reversed, and the cause remanded.