Opinion by
Walker, P. J.
§ 295. Citation to non-resident under articles 1230, 1231, 1232 and 1233 of the Revised Statutes; requisites and sufficiency of; statement of the case. On the 20th clay of October, 1883, J. H. Shapard and Hennell Stevens, composing the firm of Shapard, Stevens & Co., residents of Brazoria county, Texas, filed this suit in the county court of Brazoria county, Texas, against D. Noble Rowan, a resident of the state of New York, for the sum of $293.58. Also for five per cent, commissions for advancing same, and eight per cent, interest from June 7, 1883, setting up in their petition that the above amount had been advanced by plaintiffs in payment of defendant’s taxes. On same day plaintiffs, by H. Stevens, made affidavit and gave bond for attachment, and the writ issued, was executed and returned same day, the return, showing a levy on the one and three-fourths leagues of land described in the judgment. On the same day — October 20,1883 — notice and accompanying certified copy of plaintiffs’ petition issued, and on the 7th day of November, 1883, the said notice and the certified copy of said' petition accompanying said notice was returned to, and’ *230 filed in, the said county court of Brazoria county, Texas, with return setting forth that it had been served on October 29, 1883. And on said 7th day of November, 1883, it being default day, judgment was rendered against defendant for $293.58, together with five per cent, commissions and eight per cent, interest from the 7th of June, 1883, aggregating the sum of $318, and for costs of suit, together with order of foreclosure of attachment lien on the land, and order of sale of same, and execution generally. On the 31st day of December, 1883, D. Noble Rowan perfected writ of error, and brings the case to this court for reversal and dismissal, and assigns as error committed by the court below the following, to wit: [The errors assigned, which are discussed, are to be seen in the opinion.]
Opinion.-—-The defendant, a resident citizen of the state of New York, was served with process in this case by personal service had upon him in that state, in pursuance of the provisions of articles 1230, 1231, • 1232 and 1233, Revised Statutes. These articles contemplated a notice, issued by the clerk of the court in which the suit was brought, addressed to the defendant, requiring him to appear and answer the plaintiff’s petition at the time and place of the holding of the court, naming such time and place. The statute also specifically enumerates the particular requisites as respects the contents of- such notice. It further provides that service in such cases shall be made by the person executing the same (who shall be a disinterested person, competent to make oath of the fact), delivering to the defendant in person a true copy of such notice, together with the certified copy of the plaintiff’s petition accompanying the same. The statute also provides for the manner of máking the return of service, and concludes that, where a defendant has been served with such notice, he shall be required to appear and answer in the same manner and under the same penalties as if he had been personally served with a citation within this state.
*231 The validity of the service and the jurisdiction of the court is called in question under the following assignments of error’, viz.:
1. “The court erred in assuming jurisdiction of this case, and the foreclosing attachment lien on the land. First, because D. Noble Rowan, defendant therein, was a non-resident of the state of Texas, and said court had no power to foreclose lien on land. Second, because the court acquired no jurisdiction over the person of Rowan by virtue of the pretended service of the notice upon him; the said pretended service not being shown by the record to have been made by a disinterested person. Third, because the notice pretended to have been served upon defendant does not advise him of the filing of an affidavit for attachment. Fourth, because the court acquired no jurisdiction of the case by virtue of the levy of the writ of attachment, the same having been issued without authority of law, no good and valid affidavit having been filed therefor—the affidavit filed in said cause not disclosing the exact amount due at the date of filing, but leaving the same to be ascertained by calculation based upon the statement in said affidavit.”
The petition and affidavit for attachment were filed the 20th day of October, 1883. The affidavit states as follows: “ That D. Rowan Noble, deféndant in said above numbered and styled case, is justly indebted to'Shapard, Stevens & Co., plaintiffs, in the sum of, to wit, $293.58, together with eight per cent, interest thereon from June 7, 1883, until paid, and five per cent, commissions on said $293.58 for advancing same. That the defendant, D. Noble Rowan, is not a resident of the state of Texas,” etc. The petition and affidavit appear to have been separate instruments; the petition prays for writ of attachment against the property of the defendant, situated in the state of Texas and county of Brazoria, and it sets forth the same grounds of indebtedness as those stated in the affidavit.
The notice issued by the clerk of the court, dated said *232 20fch day of October, 1883, contained an abstract statement of the substance of the plaintiffs’ petition, giving the docket number and style of the cause, the names of the parties, and all the other statutory descriptions prescribed by article 1230, together with the following statement, viz.: “Being a suit by attachment in the sum of $293.58, with five per cent, commissions and legal rate of interest thereon from June 7, A. D. 1883, and the probable costs of this suit.” The return of service showed that a certified copy of the petition was delivered to the defendant, together with a copy of the above notice. The return itself is as follows, viz.:
“Came to hand this, the 29th day of October, A. D. 1883, at 10 o’clock A. M., and served same day by delivering to the within named 'D. Noble Rowan, in person, a true copy of this notice, together with a certified copy of the plaintiffs’ petition attached thereto and accompanying same.
“ Witness my hand this, the 29th day of October, A. D. 1883.
(Signed) “Geo. E. Simons,
“ Dep’y Sheriff N. Y.
“Sworn to and subscribed before me, the undersigned authority, this, the 29th day of October, A. D. 1883.
[l. s.] “Joel O. Stephens,
“ Notary Public New York Co.”
The second ground of objection to the ser vice—because it is not made to appear that George E. Simons, who officiated in making it, was a disinterested person — was considered by the supreme court in the case of Jones v. Jones, decided at the recent Tyler term, the court holding that it is “a fair presumption that the party making the service is competent and disinterested until the contrary is proved.” The application of this rule to one who assumes to be an officer of the law in the state where the defendant is served, would, perhaps, add additional force to the reason upon which the court has *233 rested the rule. We regard the case cited as decisive of the question presented.
It is'sufficient answer to the third ground of objection, that the statute [art. 1230, E. S.] does'not exact that degree of particularity as to the statement of details of the plaintiffs’ demand, and of the special acts required by them to be done in order to. enforce the remedies claimed by them in the suit, which is urged in the proposition that the notice must state that the affidavit for attachment was filed by the plaintiffs. The statute requires only that the nature of plaintiff’s demand “shall be given in the notice,” and that the notice shall also “ state that a copy of the plaintiff’s petition accompanies the notice.” The nature of the demand was fully given in the notice, and it was not necessary to superadd to it a recital of the proceedings which had been taken to authorize the issuance of a writ of attachment.
§ 296. Affidavit for attachment; sufficiency of, as to statement of amount of debt; objections to defects in, must be presented in trial court. The fourth ground of objection is, that the affidavit for attachment, owing to its invalidity, afforded no ground on which to predicate the jurisdiction of the court by a proceeding in rem against the property of a non-resident. The defect pointed out by this portion of the assignment of error is that the affidavit failed to disclose specifically the exact amount due the plaintiff at the date of filing the affidavit, but left it to be ascertained by calculations based on statements contained in the affidavit. An objection of this character to the affidavit would not impeach it as being null and void. A defect of that character would require a defendant, who had been duly served with process, to appear and except to the sufficiency of the affidavit by motion to quash for irregularity, or otherwise. If it was sufficiently specific to indicate in any reasonable manner the amount claimed to be due, so that the court was able to construe it as showing an actual indebtedness, even though it may have been obnoxious *234 to exceptions in respect to form and exact definiteness, it would afford the basis on which the ✓court might exercise its jurisdiction in determining the cause, and the defendant would not be heard in the revisory court to interpose, for the first time, his objection, after a judgment by default had been rendered. The proposition as made implies sufficiently that the true amount of the alleged indebtedness was susceptible of being ascertained and rendered certain from the facts stated in the affidavit; consequently such an affidavit cannot be deemed wholly invalid or insufficient, even though the same might not conform to the most exact rule of critical precision or directness of statement. The affidavit, however, it would seem, was not objectionable; numerous decisions may be referred to in support of its sufficiency. [Briggs v. Lane, W. & W. Con. Rep. 961; citing Wright v. Ragland, 18 Tex. 289, and other authorities.]
§ 297. Attachment lien upon land; jurisdiction to enforce such lien; the subject discussed. It is assigned as error that “ the court erred in assuming jurisdiction of this case, because the said Rowan, being a non-resident of the state of Texas, the said court was without jurisdiction over him in personam, and jurisdiction with respect to him, by the courts of Texas, could only be acquired by attachment lien on his property, and that this suit being without jurisdiction in personam, was, in fact and in substance, a suit to enforce a lien on real estate sought to be obtained by attachment in limine; and that the county court has no jurisdiction to enforce a lien on real estate, and had none of this suit, or to render the judgment that was rendered in it.”
This assignment renews the very important question recently decided at the Galveston term, 1884, in the case of Newton v. Heidenheimer & Co., by the court of appeals. “ Has the county court, under our constitution and existing laws, jurisdiction to • enforce a lien upon land created by the levy of an attachment?” [Ante, § 126.]
*235 The same court, at the Tyler term, 1882, in the case of Shandley v. Conrales et al., opinion by Judge 'Willson [W. & W. Con. Rep. sec. 238], decided that question in the affirmative, which view was, in the first above cited case, reaffirmed in an opinion by Presiding Judge White, of exceeding force and clearness. The opinion referred to involved the consideration and elaborate review of the grounds of the opinion of Chief Justice Willie in the case of Hillebrand v. McMahon et al., decided by the supreme court at the Austin term, 1888 [59 Tex. 451], in which that court held views on the controlling question involved in each and all of these cases, opposed to the construction which the court of appeals had given to the constitur tional and statutory provisions regulating the subject-matter of discussion in those cases.
The honorable the court of appeals having referred this cause to us for our determination, it is apparent from the very able and exhaustive opinions which this important subject has elicited from that court, and from the supreme court, that our researches must be mainly confined to the consideration and comparison of the reasons advanced in the several opinions, pro and con, referred to, and the endeavor to deduce from them our best conclusions as to the truest construction of the law, rather than to any effort to present Original views of the subject.
•Section 8, article 5, of the Constitution gives to the district court original jurisdiction “of all suits for the trial of title to land, and for the enforcement of liens thereon.” The constitution nowhere confers concurrent jurisdiction on the county or other court of the state over the above specified subject of judicial cognizance and determination. Section 16 of the article x-eferred to, providing for the jurisdiction of the county court, is silent on the subject, otherwise than to expressly deny to that court jurisdiction of suits to recover lands.
The statutes enacted under that constitution make provision giving to the district court jurisdiction “of all *236 suits for the trial of title to land, and for the enforcement of liens thereon.” [Art. 1117, R. S.] And article 1164 of the Revised Statutes declares that the county court shall not have jurisdiction “of suits for the recovery of lands, nor of suits for the enforcement of hens upon lands.”
These clear and emphatic authoritative enunciations of the prescribed limits of the jurisdiction of the county court, in express terms denying to it jurisdiction of suits to enforce liens upon land, leave it quite free from doubt that no such suit can be maintained in that court. But it is oftentimes a fertile subject for judicial interpretation, where the terms employed by the legislature are never so direct and seemingly free from obscurity, to expound and ascertain their meaning as they were meant to be understood in various supposable cases and contingencies which may arise under them, and by judicial construction — it often occurs that terms and phrases which have well defined significations, and well recognized meanings in the law, will have attached to them in certain relations and connections which they are made to occupy, a modified or qualified meaning, and the court will deny to them the sense in which they would be accepted in other and different relations or'associations, but not, it is conceded, where the language of the act is clear, and admits of but one interpretation. “In Maryland (says Sedgwick on Statutory Construction, 256), it has been said that the intent and meaning of the makers should be followed, although it may seem to be contrary to the letter of the statute. The words of an act may be disregarded when that is necessary to arrive at the intention of the law-makers, but not where the act admits of only one interpretation.” [Citing Canal Co. v. R. R. Co. 4 Gill & Johns. 152; Brown v. Somerville, 8 Md. 444-456.] And see Sedgwick on Con. and Stat. Cons. p. 313, where the author, quoting from Stamels v. Raymond, 4 Cush. 314, remarks: “It was said by the court that, admitting that according to the letter of statute the defendant was *237 liable, still, that statutes are to be construed according to the intentions of the makers, if these can be ascertained with reasonable certainty, although such construction may seem contrary to the ordinary meaning of the letter of the statute.”
These preliminary remarks are suggested by the pointed and forcible discussion by Presiding Judge White of certain of the provisions of the attachment law, which, he concludes (as did Judge Willson in his opinion in Shandley v. Comales, supra), authorized and contemplated proceedings which were in legal effect for ‘c the enforcement of liens upon land.” The court of appeals held, in the two cases decided by them, that the county court had no jurisdiction to give effect to the provisions referred to in the attachment law. In that connection the opinion in Newton v. Heidenheimer says: “Our constitution, as before stated, has expressly given to the district court original jurisdiction to enforce liens upon land [art. 5, sec. 8], and it has conferred neither a like nor concurrent jurisdiction upon any other court. * * * Happily, the legislature can still exercise the right to confer the power, if it should deem it necessary to the convenience of parties litigant, and a due administration of justice. Until they have provided this “sure and safe way” out of the difficulty, we shall be constrained by our oaths of office, and by our sense of official duty, however reluctant we may be to differ from our supreme court, to adhere to our previous opinion, and to hold that, in our opinion, a plain construction of our constitution and laws forbid county and justices’ courts from enforcing or foreclosing attachment liens on lands.” [Ante, § 126.]
The views thus expressed on this question rest solely on the construction that the court gives to the character and legal nature and effect of the attachment proceedings referred to. If they are properly characterized as proceedings to enforce such .liens as the constitution and laws declare must be cognizable only in the district court, the deductions drawn by the learned judge from the *238 premises stated are clearly unanswerable, and are manifestly correct. On the other hand, if the levy of an attachment on land at the institution, or during the pendency, of a suit, and a decree of the court subjecting the land to be sold on account of the lien secured or obtained by virtue of the levy of said attachment, is in legal construction not a lien of the character contemplated by the constitutional and statutory provisions above referred to, it must follow that the statute authorizing such levy of attachment through the process of the county court, and alike authorizing a decree condemning the land to sale under the lien acquired by the levy, cannot be deemed, on those considerations, as derogating from the true intent and meaning of the constitutional and statutory jurisdictional limitations imposed by them on the county court.
The language of both the constitution and the statute, in terms prescribes the jurisdictional limitations to “suits” for the enforcement of liens.upon land. The ordinary sense of the phrase referred to, would refer to causes of action having for their remedy, at the time of their institution, the enforcement of a then existing lien. It contemplates, we think, a suit brought upon a cause of action in which a lien is asserted to exist, and which seeks the appropriate legal remedy — a foreclosure of it by decree adjudicating the lien, and an appropriate order to enforce its benefits to the complainant.
The reason upon which this policy of our system of laws has, from the earliest period, applied this limitation of jurisdiction in respect to liens upon lands, whether declared by express constitutional or legislative enactment or not, has been forcibly and clearly illustrated in the opinion of Chief Justice Willie, in Hillebrand v. McMahon, supra, in the review he makes of our early decisions. His opinion cites Marshall v. Taylor, 1 Tex. 235; Lane v. Howard, 22 Tex. 8; Hargrave v. Simpson, 25 Tex. 396, and shows from them that, although there existed no constitutional nor direct statutory inhibition *239 against the exercise of jurisdiction by justices of the peace (at that time county courts exercised only probate jurisdiction) to enforce vendors’ liens, mortgages, etc., yet from the nature of the subject-matter, in its relation to the general powers, character and jurisdiction of the courts, as a matter of proper judicial construction as to the distribution of matters of equitable cognizance, and in respect to the important and complex nature of the subject itself, it was never intended that jurisdiction over it should be exercised, except by the district court. In Lane v. Howard it was said, in effect, that it was not the intention of the law to give to justices of the peace jurisdiction to determine questions, the decision of which requires correct knowledge of the abstruse principles of equity jurisprudence.
This judicial interpretation of the powers of the courts under the constitution of 1845, and the statutes enacted under it, was transplanted into the subsequent constitutions by specific and defined declarations to the effect that the district court shall be the exclusive, repository of jurisdiction to enforce liens upon land, as well as to try titles thereto.
The constitution of 1866 constituted the county court with civil jurisdiction, and the act of 1866 limited its jurisdiction to the extent of inhibition against trying actions of trespass to try titles, or to enforce vendors’ liens. [1 Pas. Dig. art. 6068.] Article 4, section 16, of that constitution gave the district court original jurisdiction of all suits for the enforcement of liens on land.
Here is to be observed, both in the constitution and legislative enactment, the same disposition of the framers of the former, and of the' legislature, to preserve the integrity of the exclusive jurisdiction of the district court over the subject of the enforcement of liens upon lands, and not to extend it by giving concurrent jurisdiction to any court of an inferior grade. The same policy is manifested in the constitution of 1870, and the laws enacted under it. County courts possessed of civil jurisdiction *240 were not provided for; and the district court had original jurisdiction “of all suits for the enforcement of liens.” Justices of the peace had such civil and criminal jurisdiction as might be provided by law, and the law conferred on them “power to foreclose mortgages and enforce other liens upon personal property, where the amount shall not exceed $100.” The constitutional provisions of 1876, and the laws enacted thereunder bearing upon the subject, have already been noticed.
It is apparent that the spirit of our judicial determinations, and the legislation, orgapic and legislative, have been strictly in accord with each other, and the opinions which have been cited in the earlier cases illustrate the reasons upon which our policy has been established, to confine the jurisdiction over questions involving title to land, or the determination of remedies affecting liens upon land, to the court possessing the highest original jurisdiction —the district court of the state.
There has been, therefore, no room for a difference of opinion, nor does any exist, between our two courts of higher appellate jurisdiction on the question as to whether the county court may entertain jurisdiction of a suit which, admittedly, is brought to enforce a lien upon land. And when the suit was not brought mainly or solely for the purpose, jt would probably not be questioned that it would be beyond the jurisdictional authority of the county or justice’s court to ,determine, in such suit, a right which involved the necessity of deciding upon and enforcing a lien upon land, even though such question were presented as a collateral branch or incident in such suit. In other words, the conflict of opinion between those learned courts does not involve a difference between them on the proposition that no suit can be entertained by the county court to enforce a lien upon land asserted by the plaintiff to have been created before suit was instituted, and which required judicial investigation to determine its validity, and which was not a mere incident or parasite of the suit itself, created by the legal *241 effect and consequences of the ordinary processes of the court during the progress of the cause.
The supreme court decides that an attachment levied on land, in a suit brought for debt as its principal object, may be enforced by the justice’s court in the mode pointed out in the attachment law for foreclosing the lien thus obtained. The court of appeals holds otherwise in respect to a case of that kind in the county court. The reasoning of the respective courts is applicable to the case, whether arising in justice’s court or county court, and it is cogent on either side.
We will consider the grounds presented by Presiding Judge White. His position is, in effect, that the attachment law virtually converts the suit into one for the enforcement of a lien on land in a mode which gives to it every essential and distinctive attribute, under our system of laws, of a suit brought to enforce air ordinary lien, and attaches to the proceeding all the ordinary consequences which, in judicial proceedings, ensue from suits of that character; that, consequently, it is something more than a mere initiatory execution issued before judgment, and in anticipation of it. That the proceeding involves the merits of the question as to whether the land be, or not, subject to the lien, and that the decree of foreclosure being conclusive between the parties, the proceeding is as much inhibited as though the question: of lien, or no lien, had arisen under one created by contract, as mortgage, deed of trust, vendor’s lien, etc.
Article 152, Revised Statutes, authorizes clerks of the-county and other courts to issue writs of original attachment, returnable to their respective courts. Article 179,, Revised Statutes, provides that “the execution of the-writ of attachment upon any property of the defendant subject thereto, unless the writ should be quashed- or-otherwise vacated, shall create a lien from the date of' such levy on the real estate levied on, and on such personal property as remains in the hands of the attaching; officer, and on the proceeds of such personal property as; *242 may have been sold.” Article 180, Revised Statutes, provides that, “should the plaintiff recover in the suit, such attachment lien shall be foreclosed as in the case of other liens, and the court shall direct the proceeds of the personal property sold to be applied to the satisfaction of the judgment, and the sale of the personal property remaining in the hands of the officer, and of the real estate levied on, to satisfy the judgment.”
For a true and proper comprehension of the question as to whether the proceedings above contemplated have application to such a lien upon land as the district court alone can enforce, it is essential to obtain an exact idea of the nature and character of the lien which the statute refers to, and which it provides may be foreclosed; and if its character be not such as the policy of the law intended to exclude from the jurisdiction of the county or justice's court, in that case the magic of words and terms must give way to the substantial intent of the law.
The law intends that, where a lien is claimed to exist on lands which the arbitrament of the courts must determine between the parties, that the district court alone must decide that question. But does the law intend, under the principle just stated, to embrace in this exclusively jurisdictional prescription the determination of the simpler question of mere priority of right to the appropriation of a debtor’s property, which is liable to execution in behalf of any and all creditors ?
Although the terms “lien” and “foreclosure of lien” are used in the statute, it must be considered and borne in mind that the proceeding is not to try a question of lien otherwise asserted than by the mere legal consequence of levying the attachment on any property, indiscriminately, belonging to the defendant, which, in the language of article 179, Revised Statutes, is subject to attachment, or, what is equivalent, is subject to execution.
The proceeding is not one to try a question of lien. It is to acquire a lien by the creditor’s diligence against other *243 creditors, and the lien arises by operation of law, by force of the levy on, the land. The ‘c foreclosure, ” as it is termed in the statute, is a technical word, which, as we think, must be construed in its relation to the subject-matter, to convey the idea of a judicial declaration in favor of the plaintiff, adjudging to him priority of right against the attached land, and awarding to him the remedial agencies necessary to its enjoyment.
If the writ and levy are valid, and the property is subject to execution, there exists no question of lien to determine. If the former are defective, they may be quashed or set aside; if the property is not liable to execution, remedies exist by injunction, trial of the right of property, which may be asserted in such mode and before such tribunals as may be appropriate, according to the nature of the case requiring their application. It is not by any means conclusive against this view that a defendant might be required to seek another jurisdiction, and to avail himself of an independent proceeding, in order to have determined a question involving the title to the property levied on, where he seeks to show that it is a homestead, or where the title otherwise shown might prove that the property was not subject to execution.
To avoid a multiplicity of suits, our system favors, as .far as practicable, the determination of all matters in controversy between the same parties in the same suit; but the application of this beneficial object is not always practicable, and often it occurs that independent and auxiliary suits must be resorted to before the rights of all parties can be determined.
Article 1831, Revised Statutes, provides, for instance, for the trial of the right of property not in the forum where the property is levied ón or seized, but in that which, according to the assessed value of the property, would have jurisdiction. It was held in Cross v. Peterson, W. & W. Con. Rep. sec. 1061, that the homestead right is title to land, within the inhibition of the county court to try title to land. In case of levy of an *244 attachment on a homestead, if it fehould become necessary to have determined whether it was subject or not to levy, as the county court is without jurisdiction to determine the question of title, it might become necessary for the defendant to resort to a court having jurisdiction to try the question in order to obtain an adjudication of it.
That such complications or embarrassments may exist in cases of this kind, or even that their occurrence might be incident to the nature of the proceeding, does not afford a conclusive argument against the proposition that the county cpurt may have jurisdiction to determine the hen created by the levy. For if the lien involved by a proceeding of this kind be not, in fact, such an one as falls within the contemplation of the constitution and laws, the coulity court cannot be deprived of its jurisdiction merely because, owing to certain absolute jurisdictional restrictions touching the right of that court to determine questions of title to land, it might, in certain instances, become necessary for a defendant to seek an auxiliary remedy in the district court to make effective the protection of his rights.
The view maintained in the opinion of Judge White respecting the incompatibility of denying the defendant the right of trying the title, if need be, to the land, is presented argumentatively to show that the jurisdiction cannot be exercised consistently with our entire system of laws and procedure in cases like this, without either denying a party the common right of making a just and undoubted defense, or else to result in violating the law by trying the title to land, and that, consequently, jurisdiction in such cases could not have been intended to be conferred. We think that no such incongruity necessarily results. Although our previous attachment laws have not contained in them heretofore those specific directions which have been quoted in regard to the creation of a lien by the levy of the writ, and for its foreclosure and the decree consequent thereon, yet, practically, by legal construction of our statutes, the practice *245 of the courts of this state, as in many of the other states, has given, virtually, the same effects and consequences as our Bevised Statutes now in express terms provide. The present law is mainly declaratory of what has always been the principle and practice recognized as the effect of the levy of an attachment. In Cook v. Love, 33 Tex. 488, it was held that, where an attachment suit was successfully prosecuted to judgment, the failure to foreclose the lien (condemn the land, as expressed in the case) in the judgment was fatal to the plaintiff’s claim of lien on the land, as against a judgment creditor obtaining his judgment after the rendition of the judgment in favor of the attaching creditor. The statutes then in force, nevertheless, did not provide for such entry of foreclosure. But whether the practice of adjudicating a condemnation of the property attached was uniform or not, or whether the case of Cook v. Love was correctly decided or not, it seems from the authorities to be the law that the levy of the attachment gives the lien on the property attached, which nothing subsequent can destroy but the dissolution of the attachment. [Drake on Attach, sec. 224, and numerous authorities cited.]
The effect of an attachment dates from the time of its actual service; and when questions arise as to titles of property claimed through an attachment, and the judgment and execution following it, the rights so acquired look back for their inception, not to the judgment, but to the attachment. [Sayles’ Pr. sec. 383, citing Steven v. Thayer, 2 Bay, 272; Am. Ex. Bank v. Morris Canal, 6 Hill, 362.]
When, in a suit by attachment, the plaintiff obtains a judgment which, by the existing law, is a lien upon the property attached, the lien of the attachment becomes merged in that of the judgment, and the only effect thereafter of the attachment lien upon the property is to preserve the priority thereby acquired, and this priority is maintained and enforced under the judgment. If the plaintiff neglects, within the lawful period of his *246 judgment lien, to subject the property to execution, the lien of the attachment does not revive on the expiration of the judgment lien. [Drake on Attach, sec. 224a, citing Bagley v. Ward, 37 Cal. 121.]
It seems from reference to such authorities as are accessible to us, that the general rule on which courts administer and construe the effect given to attachment liens, is, in effect, to declare the same consequence to the lien acquired by the levy under a general judgment for the plaintiff in attachment, provided he pursues, in due time, his remedy upon the judgment by execution and sale of the property attached, as if the decree of the “foreclosure of the lien” “condemned the property to sale, ” or made other like specific determination as to the lien and the disposition of the property. Thus illustrating that the nature of the proceeding, as directed by the statute, is not one seeking to have adjudicated a supposed or alleged lien, but that our statute merely gives detailed and specific directions for declaring in the judgment that which, under similar laws elsewhere, as well as under'our previous statutes, was always the consequence of an attachment suit successfully prosecuted. We are of opinion, therefore, that a writ of attachment levied on land, while it thereby becomes a lien upon the property, and is sought to be enforced under a statute which prescribes that it shall be foreclosed, is not a suit in contemplation of law to enforce a lien. We think the proceeding is an initiatory execution, wherein the plaintiff seeks to secure and establish his priority of right as a creditor to the satisfaction of his debt out of any property the defendant may own, as against other creditors. That the effect of the foreclosure is judicially to assure him of that right, and is not, in a proper sense, a suit or a decree which determines any lien upon defendant’s property in a different or other sense than of securing to the plaintiff preference as against other creditors in respect to the property attached. The lien is derived from the levy of the writ under proper and’valid proceedings, *247 and neither the trial nor the decree involves any other question than whether the property is to he subjected to the payment of plaintiff’s debt under the lien given as a mere legal result from the levy.
From these premises, we conclude that the county court has jurisdiction to try and determine a suit of this character, and that it may adjudge the questions of “lien” and of “foreclosure” thereof so far as the statute contemplates the action to be had on the proceedings in attachment.
The qualifications and limits to the exercise of jurisdiction as to collateral issues which may be suggested, and which involve the determination of liens upon the property attached, or involve the title thereto, have been sufficiently adverted to in the course of this opinion, and, of course, we mean to be understood as adhering to the view already expressed on that branch of the subject, and to hold that, in the disposition of the case, it would be beyond the power and province of the court to trench upon the ground which has been assigned by the laws of the land to the exclusive jurisdiction of the district court. The distribution of jurisdictional authority between different courts, in respect to subjects of litigation which contain within them elements which can only be determined in the district court, is not, by any means, anomalous or without parallel, as, for instance, suit for rent and actions of forcible entry and detainer, in both of which the trial of the right or title to the land can only be permitted where the suit is brought in the district court; if, in such actions as those named, it becomes important to the rights of a litigant in the suit in the county court, or in the justice’s court, to assert and establish title to the land, he must be content to forbear the assertion of such claim of right in the forum where the suit is pending, but must resort to the district court. And so, though a defendant entitled, ordinarily, to plead a set-off against the plaintiff’s claim, if his claim exceeds *248 in amount that of which the court has jurisdiction in the case, he cannot plead in set-off, but he can sue on his claim in that court which has jurisdiction of the amount, and by injunction restrain the other party from the collection of the debt against him. [Fulgham v. Chevallier, 10 Tex. 518.]
We have endeavored to show that the inconvenience that may occur .to parties in being compelled, in certain contingencies, to resold to auxiliary suits in order to obtain every possible remedy essential to the proper determination of rights under proceedings of this kind, does not afford a successful answer to the proposition that the county court may exercise jurisdiction where land has been seized under a writ of attachment. But, without finding it necessary to indicate a positive opinion as to what remedies in such cases would be appropriate, we venture to suggest that, probably, it would be difficult to imagine a case where a substantial right of a defendant in land, in respect to either its possession or title, could be injuriously affected by the decree which the statute contemplates. Thus, it is laid down in Drake on Attachments, section 210, “ that the levy of an attachment upon real estate does not confer upon the attaching officer any rights to take the issues and profits thereof. It may be added that, unlike the case of a levy on personality, he acquires no lien upon, or special property in, the land. He is not required or authorized to take possession of it, nor in any event is he accountable for it,' or for its rents, issues or profits. . . . The lien created by the attachment, whatever be its character, is in the attaching creditor, and he only can release or discharge it.”
The defendant’s power of alienation of the property subject to the attachment is not impaired. [Drake on Attach, sec. 221.] And, as has been already quoted, “when questions arise as to the title of property claimed through an attachment, and the j udgment and execution *249 following it, the rights so acquired look back for their inception, not to the judgment, but to the attachment.” [Drake on Attach, sec. 221.]
The right secured, therefore, to the plaintiff in attachment is at last no more, under the decree of foreclosure, than record evidence of priority of lien, as between himself and other creditors, and conclusive evidence, so far as the defendant is concerned, that the land is levied on, and his interest in it subject to be sold to satisfy the plaintiff’s debt, if it be property that is subject and liable to execution. The defendant is neither dispossessed of his land, nor is his right to dispose of it, subject to what right the plaintiff may have acquired under his lien, impaired by the proceedings. The decree, or judgment, condemning the land to be sold — termed in the statute a foreclosure of the lien — leaves the defendant in possession, and the sale that is made is as under execution, selling and conveying his right, title and interest in the property. An ordinary general judgment which authorizes the issuance of execution effects the same purpose, and we apprehend that the sale, under foreclosure, of a lien of a viere levy of a writ of attachment accomplishes no more, except that it has the effect to appropriate the specific property levied on to the payment of plaintiff’s debt, without other or further levy. If the defendant has no interest in the property, the plaintiff will acquire no available lien upon it to injuriously affect the defendant; and if it is property free and exempt from the power of an execution, not being subject thereto; no lien will attach by reason of the levy of a writ of attachment any more than bad an execution been levied in the ordinary way. The purchaser, under a decree of foreclosure, of a defendant’s homestead would, it would seem, neither acquire title, nor could he obtain possession of it in an action of trespass to try title, for the reason that the defendant’s right or title to it had not been involved in the trial of the attachment suit, where the question was confined to the simple issue as to whether the plaintiff *250 was .entitled or not to the benefit of a preference lien by virtue of his attachment levy, or, in other words, whether, as against other creditors of the defendant, he should first have the benefit of a sale of the defendant’s interest in the property, provided it were subject to such process.
■ Thus it would seem that the proceeding is' not necessarily one of a character which, ordinarily, could endanger fir jeopardize the rights of a defendant for want of jurisdictional power in the court to hear and determine defenses against the proceeding involving the title to the land. But in cases where such proceedings might affect a defendant injuriously for want of such jurisdiction, the remedies by injunction and to remove clouds from the title, and other like equitable remedies, afford sufficient protection to the defendant, and the necessity for the use of such is by no means exceptional, but is frequently found to be necessary as auxiliaries in the administration of justice in other cases as well as in cases like this. A lien of this character, not being any part of the plaintiff’s cause of action, and no question of lien being involved in the cause of action set forth by the plaintiffs in their petition, is incidental, and not an issuable matter presented for determination in the suit where it is brought; and although article 180, [Revised Statutes, uses the language, “Should the plaintiff recover in the suit, such attachment lien shall be foreclosed as in case of other liens,” we think it is to be construed, not as meaning that the identical mode of determining the existence and adjudication by foreclosure of the lien must be followed as in the case of liens which are the distinct subjects of suit and litigation, such as vendors’ liens, mortgages, deeds of trust, etc., but merely that the foreclosure shall be decreed and entered in the judgment according to such forms and proceedings as may be proper in the particular case. Therefore, it is not necessarily essential in cases of this character, as it is in those of the other class, that there should be a finding *251 by the jury in their verdict that the property is subject to the lien, before a basis would exist for the judgment of foreclosure. The court will take notice of its own record, and determine, as a matter of law, whether the lien has attached or not by virtue of the levy, and, if the plaintiff recovers, will adjudge the foreclosure of the lien. In Hillebrand v. McMahon, 59 Tex. 450, it is stated that such has heretofore been the practice in respect to the adjudication of liens created by levy of an . attachment. We do not think there is anything in the alteration made in the language- of the attachment law to induce a different practice.
The argument of Chief Justice Willie, ab inconvenienti, as to the results that must ensue from denying jurisdiction to justices of the peace, and therefore alike to county courts, in the above cited case, to foreclose attachment liens, and his argument as to the reasonable adaptation of those courts to try and determine issues in respect to such foreclosures, simplified as they are in their nature, as distinguished from the difficult and abstruse learning required by courts to determine litigated questions of liens upon land, give additional force to the grounds we have presented for our conclusions in this opinion. We concur in the result reached by the supreme court, and are constrained, consequently, with the greatest respect for the very able and exhaustive opinion of Presiding Judge White, and the concurring opinion of Judge Willson, to differ from the views entertained on the question by the court of appeals.
§ 298. Suit in rem; extent of judgment in such case. This suit was a proceeding in rem, according to a carefully considered definition of the term as applied to actions of this kind, given by Justice Field in the celebrated case of Pennoyer v. Neff, 95 U. S. 734. The court had jurisdiction of the case, according to that authority, and succeeding cases from the same court following it, to the extent of adjudging the debt, and that the property bo *252 sold to satisfy the same, but no further, unless the defendant had appeared voluntarily and pleaded to the action, or had been served personally with process within this state. The judgment goes to the extent of decreeing the sale of the property and rendering a general judgment against the defendant, with authority for an execution to issue for the balance after sale of the property attached. The cause was submitted to the court without a jury, and we think the court of appeals should render such judgment as the court below ought to have rendered, and’ that such judgment should be in accordance with the above indication as to what we deem to be a correct judgment in the premises.
§ 299. Judgment may be rendered at first term after service. It is assigned as error that the cause was tried at the first term of the court after service of notice on defendant. The statute does not provide that no judgment shall be rendered until a term of the court shall have elapsed after service has been had, and the point, we think, is not well taken.
§ 300. Statement of the evidence. Where service has been had otherwise than by publication, it is not necessary that a statement of the evidence should be approved and signed by the trial judge and filed with the papers of the cause.
§ 301. Return of service of citation, when service toas made out of the sta,te; errors not assigned will not be considered. The brief of counsel presents the proposition that the service is insufficient, because the return of service is evidenced by an affidavit taken before a notary public, which does not import in any manner where it was made, no venue or place being recited in the return or the jurat. Also, that the affidavit to the return of service is not sufficient for the want of proper official designation of the officer before whom made. That it should appear by venue and title of officer, that he had authority to administer the oath, and was an officer of the place where it was administered. There being no *253 assignment of error which sufficiently involves the consideration of these points, we decline to consider them. The questions presented we regard as well worthy of thorough and careful consideration, and the New York cases that are cited seem to support the proposition advanced in respect to the irregularity, if not entire insufficiency, of a return and affidavit so loose, and so wanting in fullness and precision as this one is in those respects pointed out. We are not inclined to favor such enigmatical and unnecessarily abbreviated returns of service, nor ought such to be encouraged by liberal intendments as to matters which ordinary care and intelligence may so easily provide against. But we shall not, on the other hand, step aside to consider objections of the kind that are made in the brief of counsel, unless they are embraced under an assignment of error which will properly involve their consideration.
Same Case — Opinion by
White, P. J.
§ 302. Attachment lien upon land; the district court alone has jurisdiction to enforce such lien; construction of the constitution and statutes; meaning of the words “suit”and “foreclosure.” On account of the difference of opinion between the supreme court and this court, upon the question as to the authority of county and justices’ courts to enforce attachment liens upon lands, this case was referred by us for decision, at the last Galveston term, to the honorable commissioners of appeals. The case comes back t© us with their conclusions, and the reasons therefor embodied in the able and learned opinion of Presiding Judge Walker. We have given no little time and consideration to this opinion, in the earnest and honest hope that, if wrong in our views as originally expressed in the cases of Shandley v. Conrales & Logeman, W. & W. Con. Rep. sec. 238, and Newton v. Heidenheimer & Co. ante, § 126, we might avail ourselves of this, the first opportunity which has been presented to correct our errors in judgment, if such they were. In *254 stead, of being convinced of the error of our conclusions, candor compels us to state that the opinion now before us has only tended to confirm and strengthen us in the correctness of our views, and their maintenance, both in reason and law, as expressed in our previous opinions.
Without going over, or recapitulating, the points already discussed, we propose to discuss only the new issues made by Judge Walker, in as succinct and brief a manner as possible.
There is no dispute as to the fact that the constitution confers upon the district court alone, original jurisdiction “of all suits for the trial of title to land, and for the enforcement of liens thereon.” [Const. Y, sec. 8.] And it is admitted that no such like or concurrent authority is conferred, either by the constitution or the laws, upon any other court.
Judge Walker seems to think that there is a peculiar, if not conclusive, force in the word “suit,” or rather “suits,” as thus used in the constitution. It is insisted by him that the word indicates and means a suit instituted primarily to try the title, or to try the enforcement of an asserted previously existing lien. In other words, that the term “suit” is synonymous with, and means, cause of action. At first blush there might appear to be some plausibility in this position, especially when it is considered in connection with article 154-, Revised Statutes, with regard to attachment proceedings, wherein it is provided that “no such attachment shall issue until the suit has been duly instituted, but it may issue in a proper case either at the commencement of the suit, or at anytime during its progress.” “ Suit ” is sought to be contradistinguished from process or remedy. Is this position tenable ? What does the word “suit” mean? Chief Justice Marshall, of the supreme court of the United States, in Weston v. The City Council of Charleston, defines the word “suit.” He says “the term is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice by which *255 an individual pursues that remedy in a court of justice which the law affords him. The modes of proceeding may be various, but if the right is litigated between the parties in a court of justice, the proceeding by which the decision of the court is sought is a suit.” [2 Peters, U. S. Rep. 449.] This definition is adopted by Mr. Bouvier in his Law Dictionary; and he further says that the word “ suit ” is applied to proceedings in chancery as well as in law, and is therefore more general than action.
These authorities, we think, fully meet any supposed merit in the distinction attempted to be drawn between suit and process or remedy; and when used in our constitution and laws, it is but reasonable to presume that the word was adopted in its enlarged sense, and with a view to the definition thus given it by the highest authority in the United States. In this particular class of cases the process or remedy sought characterizes the suit, and both in legal and common parlance such actions are uniformly called “attachment suits.”
Our statute on attachments contains this provision: “Should the plaintiff recover in the suit, such attachment lien shall he foreclosed as in case of other liens.” [R. S. art. 180.] In Hillebrand v. McMahon, 59 Tex. 450, this express statute upon the subject was entirely overlooked by the supreme court; at all events, it is neither commented upon nor cited in that opinion.
This provision was inserted in our laws for the first time by the commissioners appointed to codify and revise our statutes, and it.was afterwards passed upon, ratified and adopted by the legislature. It will be seen that those commissioners term the levy of an attachment a lien, and declare that this lien “shall he foreclosed” as other liens. How are other liens “ foreclosed? ” Art. 1340, R. S., provides the mode as follows: “Judgment for the foreclosure of 'mortgages and other liens shall be that the plaintiff recover his debt, damages and costs, with a foreclosure of the plaintiff’s lien on the property subject thereto (except in judgments against executors, admin *256 istrators and guardians), that an order of sale shall issue to the sheriff or any constable of the county where such property may be, directing him to seize and sell the same as under execution in satisfaction of the judgment,” etc.
Presiding Judge Walker contends that the words “suit” and “lien,” as used in the Constitution, contemplate a “ cause of action in which a lien is asserted to exist, and which seeks the appropriate remedy — a foreclosure of it by decree adjudicating the lien and an appropriate order to enforce its benefits to the complainant,” and that they do not relate to “a mere incident or parasite of the suit itself, created by the legal effect and consequences of the ordinary processes of the court during the progress of the cause.” That an attachment “proceeding is not one to try a question of lien; it is to acquire a lien by a creditor’s diligence against other creditors, and the lien arises by operation of law by force of the levy on the land.” That “foreclosure,” as it is termed in the statute, “is a technical word, which must be construed in relation to the subject-matter, to convey the idea of a judicial declaration in favor of the plaintiff, adjudging to him priority of right against the attached land, and awarding him remedial agencies necessary to its enjoyment.”
The constitution certainly does not make any discrimination as to the nature and character of the “liens” it has reference to, and the language of the statute most unquestionably does not authorize the distinction sought to be made between liens created by attachments and those created by pre-existing contract. On the contrary, the statute expressly names them as “liens,” and declares that they shall “be foreclosed as other liens.” But it is said that the word “ foreclosure ” is a technical word, and must be construed in relation to the subject-matter; and the rule is invoked in support of his construction, “that the intent and meaning of the makers should be followed, although it may seem to be contrary to the letter of the statute.” That “the words of an *257 act may be disregarded when it is necessary to arrive at the intention of the law-makers.” In our opinion this rule does not and cannot apply in this instance, however much it may suit the convenience of courts to invoke it as to acts of ordinary legislation. As above stated, article 180, Revised Statutes, was first incorporated into our system of jurisprudence by a commission of gentlemen, selected on account of their superior skill and knowledge of the law, to codify and revise our statutes. The presumption is that they, at least, knew the force of the language, “technical” or otherwise, which they saw fit, to use, and that they intended the language to mean just what it did and does mean. Where the language, as it is, is plain and unmistakable, under such circumstances as those- mentioned, surely we should -not be required to go outside of it to hunt up another and different meaning from that which it clearly imports. The remedy by attachment was the subject, of their deliberations — they were providing a procedure with regard to it, unknown or unexpressed in the old law, and it is neither reasonable nor probable that they should have been mistaken as to their intentions, or that they should have used senseless or unmeaning words, or words liable to a construction directly opposed to their ordinary meaning in law and common parlance, if, indeed, they intend anything at all by article 180. And if it should occur that these commissioners were mistaken. in the words they used, and used words they did not intend, then it is indeed strange, passing strange, that the legislature should have overlooked and committed the same mistake when they subsequently adopted and ratified the work of the revisors. To our minds there is neither ambiguity in the language or • the intention of article 180. A general rule of construction, admitting of no exceptions, is that “where a law -is plain and unambiguous, whether it be expressed im general or limited terms, the legislature should be intended to mean what they- have plainly expressed, and,, *258 consequently, no room is left for construction.” [Cooley on Const. Lim. (4th ed.) 68.]
If our reasoning be correct, then the whole matter may be stated in a single logical syllogism, viz.: 1. The constitution says the district court alone shall have jurisdiction to enforce liens upon land. 2. An attachment writ, levied upon land, is a lien upon land, which must be foreclosed as any other lien, in order to be enforced. 3. Consequently, the district court alone has authority to enforce attachment liens upon land.
It follows from the above, inevitably, that the county court had no jurisdiction to enforce the attachment lien upon the land levied upon in this case, and its judgment assuming such authority is erroneous and illegal.
It will be observed that, up to this point, we have been considering the question in its general aspect, and as though it was one pertaining to ordinary writs of attachments; that is, attachments sued out .as áuxilaries or incidents of the suit. Such, however, is not the character of the case presented on the record before us.
In this case, Rowan, the plaintiff in error, who was defendant below, was a non-resident of Texas at the time of the institution of the suit, and was a citizen of New York. To acquire jurisdiction over him, so as to give validity to any judgment against him in Texas, it was absolutely necessary that the action should have been brought, not only against him personally, but against his property situate in the state of Texas. In other words, to give the court jurisdiction in the case, it was essential that the action should be a joint one —■ that is, that it should be both in rem and in personam. Service of citation in the suit might be had upon him personally J in conformity with the statutes (arts. 1230-1233, R. S.), but such service would have been ineffectual to bind him, unless he had property within the jurisdiction of the court, and steps were taken to subject that property to satisfaction of the judgment prayed for. In cases against *259 non-residents, it is the property levied on in? the state, and not the personal service, which gives and upholds the jurisdiction. Attachment is the proper and only remedy by which to bring the action in rem. We are aware that a different rule in this state at one time prevailed, as announced in Battle v. Carter, 44 Tex. 485, and in Wilson v. Ziegler, 44 Tex. 657. But these cases have long since been overruled, and the correct doctrine is as announced in Pennoyer v. Neff, where it is laid down by the United States supreme court, that “a personal judgment is without any validity if it be rendered by a state court in an action upon a money demand against a nonresident of the state, who was served by a publication of summons, but upon whom no personal service of process within the.state was made, and who did not appear; and no title to property passes by a sale under execution issued upon such a judgment.” This state, having within her territory property of a non-resident, may hold and appropriate it to satisfy the claims of her citizens against him; and her tribunals may inquire into his obligations to the extent necessary to control the disposition of that property. If he has no property within the state, there is nothing upon which her tribunals can adjudicate.
Substituted service by publication, or in any other authorized form, is sufficient to inform a non-resident of the object of the proceedings taken, where property is once brought under the control of the court by seizure, or some equivalent act; but when the suit is brought to determine his personal rights and obligations, that is, where it is merely in personam, such service upon him is ineffectual for any purpose.” [95 U. S. p. 914. See, also, St. Clair v. Cox, 106 U. S. 350; Pana v. Bowler, 107 U. S. 529; Freeman on Judgments (3d ed.), sec. 564.]
■ The plaintiffs, recognizing the necessity of this procedure in order to give the court jurisdiction of the nonresident Rowan, sued out their writ of attachment when they filed their petition, and as part of it, and had the same leviedv upon his land situated in Brazoria county} *260 and subsequently obtained service upon him in New York under the statute. The suit was an action in rem, made so by the attachment. Without the attachment and levy upon land, there could have been no suit of which the court would have had .jurisdiction.
Everything, then, necessary to the essential maintenance of the action w;as dependent upon the attachment and its levy upon the land. This attachment was not a “parasite ” or a mere “incident,” as Judge Walker terms such writs. It was the very soul and vital essence of the suit; but for the attachment, there could have been no defendant properly in the suit, and with the attachment levy on the land, there would have been nothing upon which to base a valid judgment. If but a “ parasite,” then it is a parasite which, instead of obtaining nourishment, furnished the source of vitality to the very plant 'to which it was attached. If but an “incident,” then it is an incident upon which its principal depends for its very existence. There were no “ contesting creditors ” in this case.
In the inception of the case, the court was asked to enforce an attachment against defendant’s property in Texas. His property consisted of land. The land was levied upon by the attachment. Had the county court jurisdiction? If it has not, as we have attempted to show, in cases of auxiliary attachments when levied upon land, a fortiori, it can have none in a case like this, where the attachment writ and its levy was essential to the existence of the cause of action. The primary object was to subject the land, when levied upon, to the payment of the debt sued on, and this being so, the object and purpose of the suit was to enforce a right against the land obtained by virtue of the attachment hen thereon.
To our minds it is clear that the district court alone has jurisdiction in such a case, because the constitution has declared that the district court alone has the authority to enforce liens upon land. In our opinion, where the object of the suit was, as in this case, to subject land *261 to the payment of the debt, the suit should have been in the district court, and not in the county court — notwithstanding the amount of the debt sought to be recovered was within the jurisdiction of the county court. We are fully sustained in this view of the matter by two cases cited in the opinion of Judge Walker, to wit: Marshall v. Taylor, 7 Tex. 231; and Lane v. Howard, 22 Tex. 7. In the former case it was held that where a suit was brought in the district court to foreclose a mortgage upon personal property, alleged to be of the value of $150, but given to secure the payment of $75 (which latter sum was within the jurisdiction' of a justice of the peace), that the district court had jurisdiction; and in the latter case, where, in an action on a note for an amount within the jurisdiction of a justice’s court, given for the balance of the purchase money of. real estate exceeding in value the jurisdiction of a justice, it was held that the suit on the note for the amount due, and to enforce the vendor’s lien, was properly brought in the district court.
June 27, 1884.
As heretofore stated, a review of the whole subject in connection with Judge Walker’s able opinion has only tended to strengthen and confirm us in the conclusion that liens created by attachments levied upon land are enforcible only in the district court under the constitution and laws of this state, and that to hold otherwise is doing violence, hot only to the letter, but also to the spirit and intent both of our constitution and our laws. Such being our earnest and honellt conviction of what the law is, we are constrained to decline to adopt the opinion of Judge Walker in this case, and for the reasons stated in this opinion, we reverse the judgment and remand the case.
Eeversed and remanded.